Land Grand Railway v. Com'rs of Coffey County.

THE LAND GRANT RAILWAY AND TRUST COMPANY V. THE BOARD·OF COUNTY COMMISSIONERS OF COFFEY COUNTY.

| 6 | 245 |
|---|---|
| e61 | 503 |
| 61 | 567 |
| 6 | 245 |
| 66 | 602 |
| 6 | 245 |
| e68 | 22 |
| e68 | 23 |
| 6 | 245 |
| 77 | 157 |

1. FOREIGN CORPORATIONS—*No legal existence outside the State where created.* A corporation is an artificial being, and can have no legal existence out of the boundaries of the sovereignty by which it is created. It must dwell in the place of its creation, and cannot migrate to another sovereignty.

2. A corporation created by the State of Pennsylvania, which cannot do business nor have an office in that State, cannot do business in the State of Kansas.

*Original Proceedings in Mandamus.*

THIS ACTION is on an application for a writ of mandamus, brought originally in this court.* The said Land Grant Railway and Trust Company bring the action to compel the said Board of County Commissioners of Coffey county to subscribe ·to the capital stock of the Missouri, Kansas & Texas Railway Company, (formerly called the Union Pacific Railway Company, Southern Branch,) to the amount of two hundred thousand dollars, and to issue in payment therefor an equal amount of the bonds of said county, and to deliver the said bonds to the Land Grant Railway & Trust Company, the assignees of the said Missouri, Kansas and Texas Railway Company.

Upon this application for said writ, the following facts among others, were shown to the court:

1st. On the 16th of February, 1866, the Legislature of the State of Pennsylvania, passed the following act:

AN ACT to incorporate the New York and California Vineyard Company.

SECTION 1. *Be it enacted by the Senate and House of Representatives of the Commonwealth of Pennsylvania, in*

[* THE statement of facts in this case, was prepared by Mr. Justice VALENTINE, as and for a part of the opinion of the court.—REPORTER]

*General Assembly met, and it is hereby enacted by the same:* That John E. Williams, John B. Church, Asahel Green, P. W. Turney, and Sidney E. Morse, and their associates, or any three of them, be, and they are hereby created a body politic by the name, style and title of "The New York and California Vineyard Company," and by such name and title shall have perpetual succession, and shall be capable of suing and being sued, impleading and being impleaded, and of granting and receiving in its corporate name, property, real, personal and mixed, and of holding and improving or disposing of by sale or otherwise, of all their lands or any part thereof, interests in, or liens thereupon, or the proceeds of the same, in any of the United States or the territories thereof, *except in the State of Pennsylvania,* the same as a natural person, and to obtain therefrom any and all minerals, and other valuable substances, whether by working or opening, leasing or disposing of privileges to work or mine, or sell such lands, or any part thereof, and to erect houses and such other buildings or works as may properly appertain to such business, and to use, let, sell, lease, or work the same, and to dispose of the products of all such lands, mines, and works as they may deem proper.

SECTION 2.  The said company shall have power to make such by-laws as they may deem proper to enable them to carry out the object of the corporation, and the same to alter or amend, add to or repeal, at their pleasure ; *provided* that such by-laws shall not be contrary to the constitution of this Commonwealth, or the provisions of this act; and to adopt a seal, and the same to alter at pleasure ; and to issue certificates of stock and bonds, representing the value of their property, and securing the same on their property, in such form and subject to such regulations as they may from time to time by their by-laws prescribe; and to regulate and prescribe in what manner and form their contracts and obligations shall be executed.

SECTION 3.  The corporators named in this act shall elect persons to serve as directors, a majority of whom shall constitute a quorum for the transaction of business, and shall hold their offices until their successors shall have been elected in accordance with the by-laws.

SECTION 4.  It shall be lawful for the Company to

establish the necessary offices for the business of the Company *wherever their business is located*, and to have their principal office in the United States in such place as they may deem expedient; at which place it shall. be lawful to hold all meetings for the transaction of the business of the Company.

SECTION 5. The stockholders of said Company are hereby authorized to change the name and title of said Company, which change shall be valid after filing a certificate in the office of the Secretary of the Commonwealth, signed by the President, and attested by the seal of the said Company.

2d. The said corporators organized under the provisions of said act, and the name of the Company was afterwards changed, as provided by § 5 aforesaid, to the " Land Grant Railway & Trust Company."

3d. On the 29th of June, 1867, the people of said Coffey county, voted to subscribe for stock to the amount of $200,000, and to authorize the Board of County Commissioners of said county to issue bonds therefor to said Missouri Kansas & Texas Railway Company, (then called the Union Pacific Railway Company, Southern Branch.)

4th. On the 14th of November, 1868, in consideration of an agreement of the said Land Grant Railway & Trust Company to build and equip a railroad from Junction City, Davis county, Kansas, in a southeasterly direction *via* Council Grove, Emporia, Burlington, and Neosho Falls, to the south line of the State of Kansas, with a view also of extending the same southerly to Fort Gibson, thence to Fort Smith, and also from Fort Gibson to Preston or Pine Bluffs on the Red River in the State of Texas, the Missouri Kansas & Texas Railway Company assigned to said Land Grant Railway & Trust Company, not only their interest in the said Coffey county bonds, but also assigned to them other county bonds, railroad bonds,

mortgages, real estate, etc., to the value in the aggregate of several millions of dollars.

5th. On the 17th of February, 1870, the legislature of Pennsylvania passed another act as follows:

A SUPPLEMENT to an act entitled " an act to incorporate the New York and California Vineyard Company," (now called the Land Grant Railway & Trust Company,) approved Feb. 16, 1866.

SECTION 1. *Be it enacted by the Senate and House of Representatives of the Commonwealth of Pennsylvania in General Assembly met, and it is hereby enacted by the same:* That the New York and California Vineyard Company, (now called the Land Grant Railway and Trust Company,) incorporated by the act to which this is a supplement, in addition to the authority conferred in said act are hereby authorized to borrow money, in any State, territory, or country, *except the State of Pennsylvania,* on such terms and such rates of interest as they can agree upon, and to give in evidence of said loans, certificates, obligations, or bonds, payable on demand, or at some fixed time, and to give such collateral or mortgage security for the payment of said loans, certificates, or bonds, as they may have to give, in such manner and form as they can agree upon with their creditors.

SECTION 2. They are also hereby authorized to make and execute all contracts which they deem expedient for the improvement of real or personal estate.

This action was commenced in this court on the 5th of July, 1870. [The case was decided, and opinion filed on the 29th of September following.]

*Ruggles & Plumb* for the plaintiff:

1. The plaintiff, although a foreign corporation is duly and legally organized, and can maintain this action.

The petition or information shows that the Union Pacific Railway Company, Southern Branch, is a corporation duly organized under the laws of this State, Gen. St., 1868, p. 650, §§ 108, 122; p. 192, § 9.

2. The legality of a corporation can only be inquired into in a direct proceeding, and in this State, only at suit of proper officers, except where a private party claims rights.

,The defendants have no right in this action to inquire into the legality of the organization of the corporations plaintiff. 32 Cal., 354; 26 Ind., 286; 24 Ills., 46; 7 Wend., 553; 24 Barb., 395; 2 Bosw., 156. The common-law rule is in force here: · Gen. St. 1868, p. 1127, § 3. ·

3. The Land Grant Railway and Trust Company is .a ·corporation created by the laws of the State of Pennsylvania. This shows a corporation *de facto*, and their corporate capacity cannot be attacked. (Authorities above cited.)

It is claimed that the L. G. R. & T. Co., is prohibited by the laws of Pennsylvania from acting as a corporation in that State, and therefore cannot act as such beyond the place of its creation. Such is not a fair construction of its charter. Pennsylvania had undoubted right to create the corporation. Having created it and given it a domicile, it had a right to give it authority to act outside of the State, and its contracts to be performed in the State of Kansas; and rights derived therefrom are valid and give the L. G. R. & T. Co. the right to sue in the courts of this State. 14 Peters, 122; 12 N. Y., 495.

The L. G. R. & T. Co. has not " migrated " to Kansas. It has made a contract to be performed in this State, and now seeks its enforcement in the Kansas courts. ·This it has a right to do unless the constitution and statutes of Kansas prohibit. 13 Peters, 588.

*Clough & Wheat, Shannon & Shannon,* and *McClure & Humphrey,* for Board of Commissioners: · ·

1. The plaintiff has not shown or stated facts sufficient

to entitle it to the writ of mandamus asked for. The Land Grant and Railway Trust Company affirmatively shows by its Pennsylvania charter that it has not capacity to sue, or to do any of the acts or things it claims it has done. As a consequence, it affirmatively appears that it could not, in the manner it claims it has, become entitled to receive such bonds as it demands from the defendant, and the writ must be refused.

2. The laws of Pennsylvania creating the "Land Grant Railway and Trust Company," and defining its powers do not authorize said company to act in that State; therefore, any act by it done there would be *ultra vires*, illegal, and void, as it could not, in Pennsylvania, do an act which it was not authorized to do. 13 Minn., 64, 65; 9 Howard, 172; 13 Peters, 519; 44 Barb., 625; 30 English L. & Eq., 10, 120; Peirce, 397 to 404; 56 Penn. St., 413.

And the plaintiff cannot exist as a corporation, or act as *such*, outside of the limits of Pennsylvania by virtue of a charter granted by that State which limits it to action out of that State; and therefore, so much of plaintiff's Pennsylvania charter as attempts to authorize it to act as a corporation outside of the limits of that State, is void. 20 Ind., 492; 14 New Jersey Ch., (1 McCarter,) 380, 383; 14 Georgia, 327; 51 Penn. St., 228; A. & A. on Cor., §§ 161 and 273; 38 Maine, 343; 14 Peters, 122, 131, 149; 1 Redfield on R. W., 57, note 10; 4 Kas. 469; 27 Maine, 509, 520; 1 Black, 286, 295; 1 Sumner, 46.

By comity, corporations are allowed, in States foreign to that which created them, to perform such acts as *they are empowered to perform in the place of their creation.* 13 Peters, 589, and the other cases above cited.

It will not be permitted for Pennsylvania to spawn cor-

porations, and confer on them corporate powers by special act to be exercised in Kansas, when the Legislature of Kansas could not do so itself; Sec. 1, Art. 12, Const.; 4 Kas., 124. Said sec. 1 of Art. 12 of the Constitution of this State, shows that it is against the policy of this State to permit corporate powers to be conferred by special act in this State; and whilst by comity this State might permit a Pennsylvania corporation to exercise here, by·agents, (to the usual extent,) such powers as it might lawfully exercise in that State, yet neither comity nor any sort of courtesy requires this State to recognize any corporation created by Pennsylvania for the purpose of exercising its powers *elsewhere* than in that State. 20 Ind., 525. And it is only by comity that the plaintiff can be recognized in Kansas. 16 Wis., 136; A. & A. on Cor., § 161; 18 Pick., 193; 5 Bush., 69.

If we are right in our claim, that plaintiff cannot, under its charter, (shown by itself,) act or be recognized here, we suppose it follows that plaintiff has itself shown that it has not capacity to sue here; § 89 of civil code, sub-div. 2. But whether so or not, plaintiff has at least shown, that it is beyond its power to enter into such a contract as that mentioned in said petition, by virtue of which it claims to be entitled to the bonds of the county, through, or because of, the means of such a contract.

The opinion of the court was delivered by

VALENTINE, J.: In the consideration of this case it is necessary that we should go back to the very foundation upon which the plaintiffs build their superstructure; that we should look into the origin and organization of their supposed corporation; that we should investigate the validity of their *Pennsylvania charter*, and that we should

determine whether they have any legal status, or legal corporate existence in Kansas. The defendants deny that the plaintiffs have any legal corporate existence in Kansas or elsewhere; and deny particularly that they have any legal right to engage in any such business in Kansas as they have engaged in on such a grand scale for the last two years.

It is certainly with no feeling of hostility towards any one, that we investigate these questions. They are thrust upon us without our consent. The plaintiffs bring the case here, and these questions necessarily arise in the case at the very threshold of its examination, and we could not well, if we would, escape from their investigation.

It must be admitted that the plaintiffs have been of great benefit to the people of Kansas. They have vastly increased the wealth of the State. They have expended millions of money in enterprises of incalculable benefit to the public. They have built and are building within this State, long lines of railroads, instruments of commerce and intercourse essential to the prosperity of any people, and a species of improvement without which civilization itself could no longer progress.

But let us turn to the plaintiffs' Pennsylvania charter. "It is well settled that while a nation possesses an exclu-

1. CORPORATIONS —their creation, existence, powers, etc. sive jurisdiction within its own boundaries, neither constitutions nor statutes have any intrinsic force, *ex proprio vigore*, beyond the territory of the sovereignty which enacts them, and the respect which is paid to them elsewhere depends on *comity* alone." (Sedg. on Stat. and Cons. Law, 69.) This is a maxim, self evident, and universal in its application, applying as well between the different States of this Union as between

foreign States; and needs only to be stated to be assented to. It would be absurd in the extreme to suppose that the laws of any State or country could have any force or operation beyond the boundaries of the State enacting them. " A corporation is an artificial being, invisible, intangible, and existing only in the contemplation of law. Being the mere creature of law, it possesses only those properties which the charter of its creation confers upon it, either expressly or as incidental to its very existence." (4 Wheat., 636.) It " can have no legal existence out of the boundaries of the sovereignty by which it is created." " It exists only in contemplation of law and by force of the law; and when that law ceases to operate and is no longer obligatory, the corporation can have no existence. It must dwell in the place of its creation, and cannot migrate to another sovereignty."—(13 Peters, 520, 588, 589.)

"It is a rule of law that a private corporation whose charter has been granted by one State cannot hold meetings and pass votes in another State.—(14 N. J., 380, 383.) " Corporate acts performed by the body of the corporation while sitting out of the State which creates it, are void and of no effect."—(20 Ind., 292, 297. And see 27 Me., 509, 524.)

A corporation, in order to have any legal or valid existence, must have a home, a domicile, a principal place of doing business, within the boundaries of the State which creates it. It may send agents into other States to do business, but it cannot migrate in a body. If it attempts to migrate in a body, to go beyond the jurisdiction of the laws which bind and hold it together, it dissolves into its original elements, and the persons who comprise it become only individuals. And even where a corporation

has a legal and valid existence in its own State, the only recognition that other States will give to it is such as the rules of courtesy and comity between States require.

Under the rules of comity, a foreign corporation may by its agents usually exercise in another State all the powers which it could exercise in its own State, which are not repugnant to the laws and institutions, nor prejudicial to the interests of such other State. And comity would perhaps allow a foreign corporation to exercise in another State, powers beyond what it could exercise in its own State, which were absolutely necessary to the exercise of its legitimate functions in its own State. For instance: Suppose that grapes and wine could not be produced in the State of Pennsylvania; and suppose that the State of Pennsylvania desired to charter a corporation to furnish grapes and wine from the States of New York and California to the people of the State of Pennsylvania. The States of New York and California might, through comity, allow said corporation to hold, occupy, and operate vineyards in their respective States for that purpose. But this is certainly as far as any kind of courtesy or comity would go. No rule of comity will allow one State to spawn corporations, and send them forth into other States to be nurtured, and do business there, when said first mentioned State will not allow them to do business within its own boundaries.

The first section of the plaintiff's charter says that this corporation, (the New York and California Vineyard Company,) may do business any where *except* *in the State of Pennsylvania*—which is equivalent to saying that it shall not do business in the State of Pennsylvania; and the fourth section says that it shall establish their offices *where their*

2. Pennsylvania corporations not recognized in that State, will not be recognized in Kansas.

*business is located,* which is equivalent to saying that they shall not establish any office in the State of Pennsylvania. From the only territory in the whole world, over which the State of Pennsylvania has any jurisdiction or control, and in which it could authorize a corporation to have an office, or to do business, it excludes this corporation; and the attempt on the part of the State of Pennsylvania to authorize this corporation to have an office, or to do business anywhere else except in the State of Pennsylvania, is *ultra vires*, illegal and void. The truth is, that while this supposed corporation was originally organized for the whole United States, except the State of Pennsylvania, and afterwards by its amended charter of February 17th, 1870, for the whole world except Pennsylvania, it had no legal or valid existence anywhere upon the face of the earth. At the very creation of this supposed corporation its creator spurned it from the land of its birth, as illegitimate, and unworthy of a home among its kindred, and sent it forth a wanderer on foreign soil. Is the State of Kansas bound by any kind of courtesy, or comity, or friendship, or kindness to Pennsylvania, to treat this corporation better than its creator (the State of Pennsylvania) has done? It can hardly be supposed so, when we come to see how carefully our own constitution has guarded the creation of corporations in our own State.

The said charter would be void for other reasons than these we have mentioned, if it had been enacted by the Legislature of the State of Kansas. It contravenes two provisions of our constitution. It is a *special act*, conferring corporate powers; (§ 1, Art. 11, Const.;) and the subject of the act is not clearly expressed in the title; (§ 16, Art. 2, Const.)

The following authorities bear upon the questions discussed in this case: Redfield on Railways, 56, 57, 58, and note 10; Ames & A. on Corps., §§ 161, 273; 13 Peters, 520, 588; 14 Peters, 122, 129; 1 Black, 286, 295; 51 Penn. St., 228, 231; 5 Bush. (Ky.) 69, 75, et seq; 20 Ind. 492, 525, et seq; 14, N. J., (1 McCarter,) 380, 383; 27 Me., 509, 520, et seq; 1 Sumner, 46, 62.

The writ of mandamus is refused.

All the Justices concurring.