THE MISSOURI LEAD MINING AND SMELTING COMPANY, Limited, v. REINHARD *et al.*, *Plaintiffs in Error.*

In Banc, February 14, 1893.

1. **Corporations**: ELECTIONS OF DIRECTORS: MEETINGS OF STOCKHOLDERS: INCREASE OF STOCK. Under the statute of this state providing that articles of association of a corporation shall state the city or town and county in which it shall be located, acts of the body corporate itself, such as the annual election of directors, votes to increase or diminish stock and other meetings of the stockholders should take place at the home office.

2. ———: MEETING OF STOCKHOLDERS IN FOREIGN JURISDICTION. Where, as in this state, there is no prohibitory statute, and all the shareholders give their consent, the acts of the stockholders at a meeting held in a foreign jurisdiction are valid.

3. ———: ———: CONTRACT FOR SALE OF CORPORATE PROPERTY: DEED. The directors of a corporation organized under the laws of this state may meet in a foreign state and contract for the sale of its property here and direct its president to execute a deed, and his acts in executing and delivering it there, although to a foreign corporation, are as valid as if performed at the office of the corporation here.

4. ———: TRANSACTION OF BUSINESS IN FOREIGN STATE. Though corporations are mere artificial beings and creatures of the law where organized, they may hold property and transact business in a foreign state or country, when not prohibited by the laws of such country.

5. ———: ENGLISH MINING COMPANY: PURCHASE OF LANDS IN MISSOURI. A corporation organized under the laws of England empowering it to purchase, hold and operate mining lands in this state may do so, there being nothing in the laws of this state prohibiting it.

6. ———: ———: ———. Where the memorandum of association of a corporation, organized in England under the laws thereof, provides, among other things, for the purchase and operation of mining lands in Missouri and "elsewhere," it has power to purchase and operate such lands in England as well as in this state.

7. ———: ———: ———. Although such English corporation is not, by its articles of association, empowered to own and operate mining lands there but is authorized to own and operate them in this state, it may do so here, such business not being opposed to the policy of our laws and there being no statute of this state denying it the right to do so.

8. ———: FRAUDULENT SALE. The single fact that a Missouri corporation at the time of making a sale of its property to an English corporation failed to provide for the payment of a contested claim of $1,000, standing alone, does not warrant the inference that the transfer was made to defraud creditors, where the circumstances all tend to show that the sale was made in good faith.

9. ———: CREDITORS AND STOCKHOLDERS; TRUST FUND FOR PAYMENT OF DEBTS. The capital stock and other property of a corporation are in equity,. as between creditors and stockholders, deemed to be a trust fund for the payment of the debts; and where such property has been divided among the stockholders, leaving debts unpaid, the stockholders are bound to refund.

10. ———: ———: ———: REMEDY. Semble, that the creditor of a corporation may enforce his claim against another corporation purchasing the property of the debtor pending suit, there being no actual fraud in the sale; but his remedy against the old stockholders or the new corporation is by bill in equity.

11. ———: ———: ———: ———. A purchaser at the execution sale under a judgment in favor of the creditor, in such case is only entitled to be substituted to the latter's rights to the extent of the amount of his bid with interest thereon.

*Error to Franklin Circuit Court.*—HON. RUDOLPH HIRZEL, Judge.

AFFIRMED.

*L. F. Parker* for plaintiffs in error.

(1) *First.* Corporate acts can be performed and corporate meetings held only within the sovereignty which creates the corporation. Angell & Ames on Corporations, sec. 498; *Aspinwall v. Railroad,* 20 Ind. 492; *Hilles v. Parrish,* 14 N. J. Eq. 380; *Ormsby v. Mining Co.,* 56 N. Y. 623; *Land Co. v. Leigh,* 59 Tex. 339. *Second.* The property of a corporation is a trust

fund for the payment of its debts, and a creditor is in a position to contest the validity of any unauthorized diversion of this fund.    Thompson's Liability of Stockholders, sec. 10, and authorities cited; *Sweeney v. Sugar Co.*, 4 S. E. Rep. 431.    (2)  A corporation can have no legal existence out of the boundaries of the sovereignty creating it.   It must dwell in the place of its creation and cannot migrate to another sovereignty. *Bank v. Earle*, 39 U. S. 584.   Its existence will be recognized in other sovereignties and it will there be permitted to exercise those powers only, which it can exercise within the limits of the sovereignty creating it. *Bank v. Earle, supra; Railroad v. Gebhart,* 109 U. S. 527; *Carroll v. East St. Louis*, 67 Ill. 568; *Starkweather v. Bible Society*, 71 Ill. 50; *Trust Co. v. Lee*, 73 Ill. 142; *Female Seminary v. Sullivan*, 116 Ill. 375.    (3) The words, "or elsewhere," occurring in plaintiff's memorandum of agreement, do not authorize it to do business in England, as general language following particular words will be presumed to be used in subordination to those particular words, and will be construed and limited accordingly.    *Grumley v. Webb*, 44 Mo. 444; *Butler's Appeal*, 73 Pa. St. 448; *Brown v. Jones*, 2 Gallison, 477; *Wright v. Trans. Co.*, 8 Blatch. 22; *City v. Laughlin*, 49 Mo. 559; *Sandiwvan v. Beach*, 7 Barn. & Cress. 96; *Regina v. Reed*, 28 Eng. L. & Eq. 133; *Regina v. Nevill*, 55 English Common Law Report, 452; *State v. Pemberton*, 30 Mo. 376.    (4) A corporation created in one sovereignty to do business wholly in another will not be recognized in either sovereignty, and the articles of such incorporation are void, and such corporation has no right to take or hold real estate, or to exercise any power whatever.    *Brown v. Dibble*, 8 West. Rep. 820; *Hill v. Beach*, 1 Beasley (N. J.), 31; *Trust Co. v. Coffee Co.*, 6 Kan. 245.    (5) Title by deed implies a contract and two competent

parties, and a deed to a person having no existance is a nullity. *Thomas v. Marshfield*, 10 Pick. 364; *Hornbeck v. Westbrook*, 9 Johns. 73; *Land Ass'n v. Scholler*, 10 Minn. 331; *Jackson v. Cory*, 8 Johns. 385; *Harriman v. Southam*, 16 Ind. 190. (6) *First.* A voluntary conveyance made by an insolvent grantor, or the making of which renders the grantor insolvent, is fraudulent in law as to existing creditors and the court will so find, regardless of what the court may believe were the motives of either party. *Potter v. McDowell*, 31 Mo. 69; *White v. McPheeters*, 75 Mo. 286; *Obermeier v. Treseler*, 19 Mo. App. 519. *Second.* Especially is this true where the grantor is a corporation whose assets are the trust fund, in the hands of its officers for the payment of its debts. Thompson on Liability of Stockholders, secs. 10 and 12. (7) *First.* To invoke the rule which protects an innocent purchaser for a valuable consideration without notice, a party must set up this defense affirmatively in the pleadings and a general denial is not sufficient to raise it. Kerr on Fraud & Mistake, p. 371; Story's Equity Pleading, sec. 805; *Phillips v. Phillips*, 31 L. J. Ch. 321; *Frost v. Beckham*, 1 Johns. Ch. 288; *Jewett v. Palmer*, 7 Johns. Ch. 65; *Halsa v. Halsa*, 8 Mo. 303. *Second.* The fact that plaintiff's officers when upon the stand were silent as to their notice or knowledge of the existence of this debt, is of itself sufficient to raise a presumption of such knowledge. *Henderson v. Henderson*, 55 Mo. 534. *Third.* When fraud is a matter in issue, any unusual method of transacting business, apparently done with a view for effect and to give the transaction an air of honesty, is of itself a badge of fraud. *Twines Case*, 3 Coke, 81; *Comstock v. Rayford*, 12 Sm. & Marsh, 369; Bump on Fraudulent Conveyances, 50, *et seq.; Baldwin v. Whitcomb*, 71 Mo. 659. Where a debtor has conveyed his lands in fraud of his creditors, it is optional

with the creditor whether he will institute suit to set aside the fraudulent deed and subject the land to the payment of his debt, or whether he will sell the land under execution. If he pursues the latter course, the purchaser at execution sale occupies the same position as to his right to assail the fraudulent conveyance as did the creditor under whose judgment he purchased, and, if the deed be found fraudulent, he acquires good title to the land. *Cobb v. Woodward*, 50 Mo. 95; *Ryland v. Callison*, 54 Mo. 513; *Lionberger v. Baker*, 88 Mo. 447; *Mastin v. McBride*, 105 Mo. 269.

*John W. Booth* and *T. B. Crews* for defendant in error.

(1) The rules of comity which apply between the several states composing the United States are merely the rules of international comity. *Bank v. Earle*, 13 Pet. 519; *Merrick v. Van Santvoord*, 34 N. Y. 208; *Cowell v. Springs Co.*, 100 U. S. 55; *Christian Union v. Yount*, 101 U. S. 352. (2) A corporation is an artificial being and has no dwelling. Its domicile is the legal jurisdiction of its origin, irrespective of the residence of its officers, or the place where its business is transacted. *Merrick v. Van Santvoord*, 34 N. Y. 208; *St. Clair v. Cox*, 106 U. S. 350; Morawetz on Corporations [2 Ed.] note 2 to sec. 958. (3) The comity of nations permits a corporation created by one sovereignty to exercise in another all the powers conferred on the corporation by the law of its creation, unless contrary to the policy, or opposed to the interest, or forbidden by the positive law of the state where the dealing takes place. *Merrick v. Van Santvoord*, 34 N. Y. 208; *Bank v. Earle*, 13 Pet. 519; *Cowell v. Springs Co.*, 100 U. S. 55; *Christian Union v. Yount*, 101 U. S. 352; Taylor on

Corporations [2 Ed.] secs. 380–383; Morawetz on Corporations, sec. 965a.    (4) The stockholders of a mere business corporation (all acquiescing) may hold a meeting in a state other than that of its creation. Morawetz on Corporations, sec. 488; Taylor on Corporations, sec. 382; *Railroad v. McPherson*, 35 Mo. 13; *Handley v. Stutz*, 139 U. S. 417.    (5) The directors may hold their meetings and transact business in a foreign state.    *Railroad v. McPherson*, 35 Mo. 13; Morawetz on Corporations, sec. 533.    (6) The managing agents of a corporation are impliedly authorized to represent it abroad as well as at home.    Morawetz on Corporations, sec. 533.    (7) At common law the power to take and hold real estate is incident to every corporation, unless forbidden by statute or its charter. Angell & Ames on Corporations, sec. 110.    (8) It is a general rule of the common law in force among the states and territories of the United States that a corporation formed under the laws of another sovereignty may acquire real estate by will, gift or purchase. Morawetz on Corporations, sec. 961.    (9) Constructive notice of the pendency of a suit in a court of general jurisdiction is not either in equity or law the full equivalent of actual notice.    Its sole office is to make the judgment that may finally be rendered in the cause binding upon all persons who, pending the suit, may acquire interests in the subject-matter of the litigation. It has no operation whatever with respect to persons who, pending litigation, may have dealings with a party thereto, touching property not involved in the litigation.    (10) The doctrine that corporate property is a trust fund for the payment of creditors of a corporation is not, that, as between a corporation and all persons dealing with the corporation, the corporate property is a trust fund, under the peculiar jurisdiction of courts of equity.    The extent of the doctrine is that as

between the creditors of the corporation and the officers and shareholders of the corporation, the property of the corporation is a trust fund for the payment of debts, and that if property of a corporation be divided among or appropriated to the use of its stockholders leaving debts unpaid, a court of equity will compel them to refund and apply the property to the payment of debts. Thompson on Liability of Stockholders, secs. 10, 11, 18. (11) Maupin not having seen fit in a court of equity (where only it could be done) to attempt the enforcement of his rights as a corporate creditor, under the doctrine, that corporate property is a trust fund for the payment of corporate debts, Reinhard and Parker claiming under execution sale on Maupin's judgment at law against the Missouri corporation, here attacking a conveyance of the Missouri corporation to the English corporation, and having either the legal title to the property in controversy or else no interest whatever therein; the doctrine that corporate property is a trust fund for the payment of debts is in no manner involved in this case. (12) Fraud cannot be inferred from the fact that the grantor was indebted at the time of the conveyance. That fact alone is not enough. *Buckner v. Stine*, 48 Mo. 407. (13) Equity will give relief against clouds on the title to land against parties holding the deeds constituting the cloud, and wrongfully asserting title thereunder to the prejudice of the owner of the land holding actual possession thereof.

BLACK, C. J.—The plaintiff, the Missouri Lead Mining and Smelting Company (Limited), hereafter called the English company, is a corporation organized under the laws of Great Britain; and the Virginia Lead Mining Company, hereafter called the Missouri company is a corporation organized under the general laws of this state. The Missouri company, being

the owner of six hundred and forty acres of mining land in Franklin county in this state sold, and by deed dated the twelfth of January, 1880, conveyed the same to the English company, which purchasing company then took and has ever since held possession. Some three years prior to the date of the deed just mentioned, a Mr. Maupin commenced suit against the Missouri company, and in April, 1885, five years after the date of the deed, recovered judgment for the sum of $1,009. The six hundred and forty acres of land were sold to defendant Reinhard on the twenty-eighth of May, 1886, under an execution issued on this judgment, and he received a sheriff's deed in due form. He quitclaimed the one half to defendant Parker. This claim set up by the defendants to the land under the sheriff's deed has rendered plaintiff's title unmarketable. On these facts, which are admitted by the pleadings and proofs, the plaintiff prays for a decree that the title to the land be declared fully vested in it, and that defendants be enjoined from making any claim to the land or any part thereof.

The defendants by their answer insisted that the deed from the Missouri company to the English company is void for various reasons, and among others they allege that the transaction resulting in the conveyance to the English company was without consideration, and was an intended fraud upon the creditors of the Missouri corporation; and they pray that the deed be set aside and for naught held.

The circuit court entered a decree according to the prayer of the petition; but at the same time found that the English company purchased with knowledge of the pending suit of Maupin, and in equity should pay the Maupin judgment, and that Reinhard should be substituted to the rights of Maupin to the extent of the

amount paid by him for the land at the sheriff's sale. The court accordingly decreed a lien in favor of defendants for $140. The defendants only appealed from this decree.

The record discloses these further facts: The articles of association of the Missouri company provide for three directors, and the place of business is therein stated to be the town of St. Clair, Franklin county, Missouri. This company expended some $70,000 in the purchase of the land and in the development of the mine. It became financially embarrassed in an unsuccessful effort to obtain lead in paying quantities. To place it in a position to pay its debts and prosecute the enterprise, a meeting was held by Nathaniel Sands, Francis A. Sands and George Hopkins in London, England, on the eighth of April, 1879. At that time Nathaniel Sands resided in St. Louis in this state, and Francis A. Sands and George Hopkins resided in England. Nathaniel Sands and Francis A. Sands were the directors of the Missouri company, and they then and there elected Hopkins as a director. These three persons held and owned all of the stock of the Missouri company, and the company was indebted to Hopkins for advances made by him. These persons as directors then made a contract with a trustee whereby the trustee undertook to organize a corporation with a capital stock of £90,000 to be divided into nine thousand shares of £10 each, four thousand five hundred to be A or preferred shares, and four thousand five hundred to be B or ordinary shares.

By the same contract the Missouri company agreed to convey its property to the English company for the consideration of £60,000 to be paid in money and stock of the new company. The English company was then duly organized, and the Missouri company by its president executed and delivered the deed dated the twelfth

of January, 1880. The deed recites a consideration paid of £60,000, £5,000 in cash, £10,000 in A shares and four thousand five hundred B shares, all paid up. As we understand the transaction the stock-holders of the Missouri company received the £5,000 in money and the one thousand A and the four thous-and five hundred B shares for the money paid and advanced by them in the purchase and development of the mining property. In other words they received this consideration for their interests in the Missouri company. Various other persons subscribed for stock in the new company, and by the sale of such stock the new company raised about $100,000, all of which was expended in the further development of the mine between 1880 and 1885. The debts of the Missouri company were all paid save this contested claim of Maupin.

1. The defendants insist that the deed from the Missouri company to the English company is void because executed and delivered in England.

As our statute provides that the articles of associa-tion shall state the city or town and the county in which the corporation is to be located, it is but fair and reasonable that acts of the body corporate itself, such as annual elections of directors, votes to increase or diminish the stock, and other meetings of the stock-holders, should take place at the home office. But where, as here, there is no prohibitory statute, and all of the shareholders give their consent, the acts of the stockholders at a meeting held in a foreign jurisdiction are valid. 1 Morawetz on Private Corporations [2 Ed.] sec. 484; Taylor on Corporations [2 Ed.] sec. 382. Directors are the agents of the corporation, and it is now quite well settled that they may hold meetings and transact business in a foreign state if they desire to do so unless the contrary is expressly provided by the

charter, by-laws or the general laws of the state under which the corporation was organized. Morawetz on Private Corporations [2 Ed.] sec. 533; Taylor on Corporations [2 Ed.] sec. 381; *Railroad v. McPherson*, 35 Mo. 13; *Handley v. Stutz*, 139 U. S. 422. These three persons who transacted the business in London held all of the stock and were the duly appointed directors. The law of this state did not prohibit them from holding meetings there, and it follows that the action of these directors in making the contract for the sale of the property and in directing the president to execute the deed and his act in executing and delivering it were and are just as valid as if they had been performed here at the office of the corporation.

2. The further contention that the English company had and has no power to take and hold real property in this state is equally untenable. Though it was said in *Bank v. Earle*, 13 Pet. 584, that a corporation "must dwell in the place of its creation, and cannot migrate to another sovereignty," still it was there held that it did not follow that it could not do business in other jurisdictions. Though corporations are mere artificial beings and creatures of the law where organized, still it is settled beyond a shadow of doubt that they may hold property and transact business in a foreign state or country, when not prohibited from doing so by the laws of such country. But wherever a corporation "goes for business it carries its charter, as that is the law of its existence, and the charter is the same abroad as at home." *Railroad v. Gebhard*, 109 U. S. 527.

Now it is conceded that this company was duly incorporated under the companies' acts of Great Britain, and the proof is clear and undisputed that a corporation may be legally created there, under those acts, with power to purchase and hold real property

in other jurisdictions. According to the record before us, there can be no doubt but the laws of that country gave to this corporation the power to purchase, hold and operate mining lands in this state. There is nothing in the laws of this state denying to it the right to exercise those powers here. On the contrary, our statute laws rather encourage foreign mining corporations to pursue their business here. It follows that this corporation has the right and power to purchase, hold and operate mining lands in this state.

But it is argued that this corporation is by the memorandum of association limited to the purchase of lands situate in this state, and as it has no power to purchase and hold mining lands at home, it can have no power to purchase and hold such lands here.

The memorandum of association provides that "the registered office of this company is to be in England," and that the objects for which it is established are: "*First*. To adopt and carry into effect the agreement of the eighth of April, 1879, before mentioned. *Second*. To purchase or otherwise acquire and work any mines, minerals and mining rights, lands, hereditaments and chattels in the state of Missouri, in the United States of America or elsewhere. *Fourth*. To purchase, sell and deal in lead and lead ores and other metal and metalic ores, and generally to carry on the business of mine owners and workers of and dealers in the products of mines."

There is no doubt but that this corporation was organized for the primary purpose of purchasing and operating these particular mining lands in this state, but its business in the purchase and operation of mines is not restricted to this state. This is clearly shown by the words "or elsewhere," meaning elsewhere than in this state. This is the more apparent from the fourth paragraph; for in that no allusion whatever is

made to any locality.   This company has, we conclude, the power to purchase and operate mining lands in England as well as in this state.

But suppose we are wrong in this, and that, by reason of the language used in the memorandum of association, the company cannot purchase and operate mining lands there, still it does not follow that it cannot purchase and operate such lands here.   In *Railroad v. Coffee Co.*, 6 Kan. 255, it was held that a corporation created by the state of Pennsylvania, which could not do business nor have an office in that state, could not do business in the state of Kansas.   Speaking of the Kansas case it has been said:   "While this doctrine is correct in principle, its application requires much caution.   The fact that all the operations of a corporation are carried on outside of the state in which it was incorporated is not necessarily an objection to the legality of these operations.   It is only if some rule of law or principle of policy adopted by a state would be interfered with by allowing a forign corporation to transact business within its jurisdiction that the usual comity will be refused."   2 Morawetz on Private Corporations [2 Ed.] sec. 965a.

This corporation has its registered office in England and holds its corporate meetings and can transact much of its business there.   The fact that some portion of its business, namely, the purchase and operation of mining lands can be carried on here and here only is immaterial.   It has by the law of the place of its creation the power to do such business here, and that business is not opposed to the policy of our laws, and we have no statute which denies to it the right to carry on such business here.   This corporation, therefore, had and has the right to purchase, hold and operate these mining lands.

3. The averments in the answer to the effect that this sale of the property of the Missouri company to the English company was a contrivance to cheat and defraud the creditors of the Missouri company stand unproved. On the contrary the circumstances all tend to show that there was no actual fraud in the transaction. The new company was organized and the property of the old turned over to it for the purpose of raising additional capital to prosecute the further development of the mine. That the transaction was made and concluded for this purpose and in good faith cannot be doubted. Nor can it be said that the deed to the new company was voluntary, that is to say, without consideration. It must be remembered that this was something more than a mere reorganization of the old company; for a large number of persons having no interest in that company purchased stock in the new one. Indeed the £5,000 cash paid the old company and the $100,000 expended at the mine after the date of the deed in question was raised by the sale of stock of the new company. It is true the £5,000 and the one thousand A shares and the four thousand five hundred B shares were in the end turned over to the stockholders of the old company; but such money and stock constituted a payment made by the new company. The new company in this way paid the full value of the property purchased and conveyed by the deed.

Had the parties set aside $1,000 to meet this judgment rendered five years thereafter, no one could or would question the validity of the transaction. Is the sale to be held fraudulent and void and this vast amount of property sacrificed for $140 because of a failure to set apart $1,009 for the payment of this single contested claim, there being no actual fraud in the transaction? We say no. The sale must be held to be fraudulent in

the sense that it is void at law, before the defendants can have the relief prayed for in their answer. The single circumstance that this contested claim was not provided for, standing alone as it does, is not sufficient proof to warrant or justify the inference that the transaction was made to defraud creditors.

It does not follow from what has been said that this creditor is without remedy. It is a favorite doctrine with the courts of equity that the capital stock and other property of a corporation is to be deemed, as between creditors and stockholders, a trust fund for the payment of the debts; and where such property has been divided among the stockholders, leaving debts unpaid, the stockholders are in equity bound to refund. *Heman v. Britton*, 88 Mo. 549; Thompson on Liability of Stockholders, secs. 10, 18. It is quite possible that under the circumstances of this case the creditor could enforce his equitable claim against the new corporation; but the remedy of the creditor against the old stockholders or the new corporation is by bill of equity. The circuit court substituted the defendants to the rights of the creditor to the extent of the amount bid at the sheriff's sale with interest, and this is all the defendants have a right to recover. The defendants have no just ground of complaint against the decree entered in this case, and the judgment is therefore affirmed. All concur.