HASKINS & SELLS v. T. T. KELLY, *as State Treasurer.*

No. 15,340.   (93 Pac. 605.)

SYLLABUS BY THE COURT.

CORPORATIONS—*Foreign—Contract with the State—"Doing Business" in the State.* Under the provisions of chapter 491 of the Laws of 1905, authorizing the governor to employ such competent accountants as he may deem necessary to cause a full investigation to be made of the various state departments, the governor may employ for that purpose a foreign corporation chartered as public accountants, and such foreign corporation, while engaged in making such examination on behalf of the state, is not engaged in business in the state within the meaning and contemplation of the Bush law requiring a foreign corporation to obtain a permit to do business within the state.

Original proceeding in mandamus. Opinion filed January 11, 1908. Writ allowed.

*J. W. Gleed,* and *John L. Hunt,* for plaintiff.

*Fred S. Jackson,* attorney-general, and *John S. Dawson,* assistant attorney-general, for defendant.

The opinion of the court was delivered by

PORTER, J.: By an act of the legislature (Laws 1905, ch. 491) the governor was authorized to employ such competent accountants as he might deem necessary for the purpose of causing a full investigation to be made of the various state departments. The act appropriated funds to pay for the services of such accountants. In pursuance of the act the governor employed plaintiff to investigate the treasury department.

This is an original proceeding in mandamus to compel the state treasurer to countersign and register a warrant for the sum of $2237.75, a balance due plaintiff for services rendered in the examination of the state treasury. The warrant was issued by the auditor, upon a voucher duly approved and certified by the governor, in accordance with the provisions of the act.

The return to the alternative writ sets up as a defense: First, that plaintiff is a corporation created by the laws of another state for a purpose for which corporations are not permitted to be organized by the laws of this state, and, therefore, cannot maintain the action; second, that it is a foreign corporation which has never applied for or received permission to engage in business within the state under the provisions of the Bush law, and for that reason cannot maintain the action.

There is an agreed statement of facts, from which it appears that plaintiff is a corporation organized and created under the laws of the state of New York, and authorized to do, as a corporation, all of the acts which it is alleged in the alternative writ were done by it. It is also agreed that plaintiff never has had an office or place of business in the state of Kansas. The Honorable Edward W. Hoch, as governor of the state, on

May 15, 1905, employed plaintiff by letter, addressed to it at its office in the city and state of New York, to make investigations under the act of 1905, in pursuance of which employment, under instructions from the governor, plaintiff sent its accountants to the office of the treasurer of the state, and they there took from the books and records information and data necessary for the making of a report, and afterward, at its office in New York, from the information and data so taken, plaintiff prepared its report and delivered the same to the governor.

Our statute defining the purposes for which corporations may be created has no reference to foreign corporations. Other states and other governments may authorize corporations to exist for any lawful purpose which the lawmaking power of such states or governments may deem proper. And if the nature of the business which a foreign corporation is authorized by its charter to transact is not repugnant to our laws or contrary to our public policy its business may be transacted in this state. This proposition is universally recognized as true. (*Land Grant Railway v. Com'rs of Coffey County,* 6 Kan. 245, 254; *A. T. & S. F. Rld. Co. v. Fletcher,* 35 Kan. 236, 10 Pac. 596; *Kansas City Bridge & Iron Co. v. Comm'rs of Wyandotte Co.,* 35 Kan. 557, 560, 11 Pac. 360.)

It is contended, however, that the act itself necessarily contemplates that the accountant must be a person. The contention is based upon the provision of the statute that in case the reports of the accountant shall show an offense against the state by any officer, assistant or clerk the accountant, if so requested, either by the governor or attorney-general, shall make an affidavit or complaint against the guilty person charging him with such offense, and the governor is authorized to employ competent attorneys to assist in the prosecution of such person or persons. It is seriously argued that inasmuch as plaintiff is a corporation it would be

impossible for it to comply with this provision of the act, because it is said that a corporation cannot make an affidavit. But it is apparent that the purpose of the foregoing provision of the act would be subserved equally as well if a complaint should be sworn to by some person in the employ of the corporation making the examination as if it were made by the individual who was called the accountant. It would hardly be claimed, for instance, that a valid warrant could not be issued upon a complaint sworn to by one in the employ of the corporation. Nor would the fact furnish ground for a motion to quash an indictment or information based upon such a complaint. The purpose of this provision is to facilitate the prosecution of any state officer or employee of a department who may be shown by the report of the accountant to be guilty of any offense against the state, and it is impossible to conceive of any way in which this purpose could be defeated by the fact that the complaint under such circumstances is sworn to by an officer or employee of the corporation acting as accountant. If the objection is not frivolous it has at least no substantial merit.

After all, the main question is whether the state in the exercise of its sovereign powers finds its hands tied by the provisions of the Bush act which require a corporation to comply with that act before engaging in business in the state. The mere statement of the proposition shows that there can be but one answer, though there are several reasons for the answer. In the first place, plaintiff was not transacting business in the state as contemplated by the provisions of the Bush law. In the second place, the Bush law was not enacted to prevent the state itself from contracting with a foreign corporation for any purpose for which the state may make a contract, nor for the purpose of preventing a foreign corporation from dealing with, or transacting business with, the state. The legislature determined that the accounts of state officers and departments

should be examined for the welfare of the state itself, and that it should be done through the action of the governor.   In causing this to be done, and in doing it, the state exercised a sovereign power.

The precise question was before the court and decided adversely to the contention of the defendant in *The State v. Book Co.*, 69 Kan. 1, 76 Pac. 411, 1 L. R. A., n. s., 167.   That was a case brought in the name of the state for the cancelation of certain contracts entered into between the book company and the state text-book commission, by which the book company agreed to supply the schools of the state with certain text-books, and gave bond for the performance of the obligation.   The action was based upon the failure of the book company to comply with the law known as the Bush law before entering into the contracts.   The question, therefore, was whether the contracts entered into were subject to cancelation because they were made before the book company had been admitted to do business within the state.   The following language from the opinion of Mr. Justice Burch in that case applies with full force to the question involved here:

"The Bush law has no application to the facts of this controversy.   In order better to discharge the exalted duty enjoined upon it by section 2 of article 6 of the constitution, the legislature undertook to secure uniformity of text-books in the common schools.   In doing so it exercised a sovereign power.   The matter of procuring a corporation to supply needed books is purely a state affair; no private right attaches to it.   Nor is the act one of ordinary trade or commerce, in which the state may devest itself of the attributes of sovereignty and conduct itself as an individual may do.   The most distinctively sovereign prerogatives of the legislature, under the constitution, are enlisted and concerned.   Unable to attend to certain details of the work proposed, a special agent was created, and clothed with such authority as seemed necessary to accomplish the legislative design.   The state text-book commission is a public agency created to aid in the assertion of a public right and the execution of a public power in the interest of the public welfare."   (Page 22.)

We are satisfied with the interpretation of the law as announced in that case and deem it useless to attempt to add further reasons or cite additional authorities.   The peremptory writ is allowed.