(No. 24091.—)

THOMAS SAWYER SPIVEY *et al.* Appellants, *vs.* THE SPIVEY BUILDING CORPORATION *et al.* Appellees.

*Opinion filed June 11, 1937—Rehearing denied October 12, 1937.*

JONES, J., dissenting.

COBBS & LOGAN, and POPE & DRIEMEYER, for appellants.

KRAMER, CAMPBELL, COSTELLO & WIECHERT, BRYAN, WILLIAMS, CAVE & McPHEETERS, GEORGE GILLETTE, C. A. SCRANTON, and MATTHIAS CONCANNON, for appellees.

DRYER, BROWN & POOS, for the Illinois Power and Light Corporation, cross-appellant.

Mr. JUSTICE SHAW delivered the opinion of the court:

This is an action of ejectment which was started in the circuit court of St. Clair county, by Thomas Sawyer Spivey and Elizabeth Ann Spivey, both minors and heirs-at-law of Allan T. Spivey, by their respective guardians against the Spivey Building Corporation, and various other defendants hereinafter mentioned. These plaintiffs claim to own an undivided two-ninths interest in certain real estate in East St. Louis, Illinois, which is improved with a large office building known as the Spivey Building, the property

of the Spivey Building Corporation. In addition to the building corporation, the St. Louis Union Trust Company, Albert B. Kurrus, as surviving trustee, and J. J. Driscoll, acting trustee, were made parties defendant, representing the interests of the various lien holders, as was also the Illinois Power and Light Corporation, a tenant in the building. This tenant is a cross-appellant, seeking to invalidate its lease. On a trial by the court without a jury, all the defendants were found not guilty. On the legal issues, the court held that the Spivey Building Corporation (Illinois) owned the premises in fee, subject to the lien of the three trust deeds, one to the St. Louis Union Trust Company, one to Haslam & Kurrus and one to J. J. Driscoll, and also subject to the lease of the Illinois Power and Light Corporation, as well as all other existing leases. The court found that the plaintiffs had no interest in the premises, that each of the trust deeds was a valid lien, and that the title to the property was in the Spivey Building Corporation (Illinois). The counter-claim of the Illinois Power and Light Corporation was dismissed.

In 1926 and 1927, Allan T. Spivey was the owner of certain real estate in East St. Louis, which he wished to improve with an office building and which is the real estate here in question. A building corporation was organized under the laws of the State of Delaware under the name "Spivey Building Corporation," which will hereinafter be referred to as the Delaware corporation. The certificate of incorporation provided that the principal place of business should be at Dover, Delaware, and that "the object and purpose for which the corporation is formed, is to acquire, own, erect, lease and operate a building on the site therefor and for no other purpose, which said site is described as follows:" (The certificate then describes the premises as described in the plaintiffs' complaint herein.) The certificate also further stated that the authorized capital stock should be $300,000, consisting of 3000 shares

of the par value of $100 each, 2000 shares of the same being of preferred and 1000 shares of common. Ten shares were originally subscribed and $1000 paid therefor by three residents of Dover, Delaware, who formed the corporation. Thereafter, 1000 shares of preferred stock, and 990 additional shares of common stock, were issued to Allan T. Spivey, in consideration for a conveyance of the real estate in question to the building corporation. The 10 original shares were transferred to Allan T. Spivey, his wife, Carrie E. Spivey and his brothers, Walter W., Marshal and Samuel S. Spivey, who, with Allan T. Spivey, became the board of directors. This Delaware corporation complied with the foreign corporation laws of Illinois, and received from the Secretary of State the statutory certificate of authority for transacting business in Illinois, and by such certificate was certified, in accordance with the statute, to be entitled to all the rights and privileges granted to foreign corporations in this State. An office was maintained at Dover, in Delaware, and also in East St. Louis, Illinois. Corporation reports were filed in both States and franchise taxes were paid in each. Following the organization of this Delaware corporation, and its qualification to do business in Illinois, Spivey conveyed the real estate in question to that corporation, and the corporation thereupon proceeded to borrow various large sums of money for the purpose of carrying out its corporate object. The original deed from Spivey, and all of the trust deeds, contained the usual covenants of warranty. Spivey, as president of the corporation, following its completion, executed all leases in its behalf, the most important of which was given to the Illinois Power and Light Corporation for a term of fifteen years.

The plaintiffs' case, and that of the Illinois Power and Light Corporation, are built upon the theory that the Spivey Building Corporation (Delaware) was still-born and never acquired corporate existence. This question having been

raised by title examiners, after the death of Spivey, a plan was worked out for curing any possible defects of title through the organization of an identical corporation under the laws of Illinois, to take over the property. The details of this plan, and the various moves that were made in and about its consummation, resulted in many complications, and the making of a very large record in this case, involving many different rights and equities, but none of them are material, in the slightest degree, unless plaintiffs' contention as above stated, is valid, and we will therefore address ourselves to a consideration of that question.

The appellants urge that this Delaware corporation never achieved existence, and their argument is based largely upon the case of *Land Grant Railway and Trust Co.* v. *Board of Comrs. of Coffey County*, 6 Kan. 245,—a case that was tried in 1870. In that case, a corporation was organized in the State of Pennsylvania, but was excluded, by the terms of its charter, from doing any business in Pennsylvania. The Kansas court held that the corporation had no legal or valid existence anywhere, and said that "the attempt on the part of the State of Pennsylvania to authorize this corporation to have an office or to do business anywhere else except in the State of Pennsylvania is *ultra vires,* illegal and void." The Kansas court went so far as to describe the supposed corporation as of illegal birth. Plaintiffs cite and rely upon certain language in *State* v. *Topeka Water Co.* 61 Kan. 547, 60 Pac. 337, although the holding in that case, and the facts on which it is based, are not in point. The previous case of *Land Grant Railway and Trust Co.* v. *County Comrs. supra,* is cited in the opinion, and it is pointed out therein that the case was not applicable to the one then being considered. It was there shown that, in the *Coffey County case,* the corporation, by its charter, was expressly excluded from transacting any business in the State which chartered it, and the Kansas court proceeded to point out the general

rule and to comment upon the *Coffey County case* in the following language: "Counsel for the plaintiff suggests that the case of *Land Grant Railway and Trust Co. v. Coffey County Comrs.* 6 Kan., 245, is applicable to this inquiry. In the case cited a corporation was organized under the laws of the State of Pennsylvania for the purpose of transacting a certain specified business in any other State, territory or country, except the State of Pennsylvania. It will be seen that the corporation thus created was expatriated by law at its birth. It was held that, having no domicile in the State of its creation, and having no corporate existence there, it could have none elsewhere, and hence could not be recognized here. The case is not applicable to the facts before us. It is a general rule, from which we have been unable to find any departure, that corporations organized to transact business in the State which created them will be permitted to carry on business in other States so long as they do not depart from the charters under which their original authority was obtained. In the case of *Bank* v. *Earle*, 13 Pet. 592, 10 L. ed. 309, Chief Justice Taney said: 'We think it is well settled that by the law of comity among nations a corporation created by one sovereignty is permitted to make contracts in another and sue in its courts, and that the same law of comity prevails among the several sovereignties of this Union. The public and well known and long continued usages of trade, the general acquiescence of the States, the particular legislation of some of them, as well as the legislation of congress, all concur in proving the truth of this proposition.' Again, in *Union* v. *Yount,* 101 U. S. 356, 25 L. ed. 890, Mr. Justice Harlan, speaking for the court, said: 'In harmony with the general law of comity obtaining among the States composing the Union, the presumption should be indulged that the corporation of one State, not forbidden by the law of its being, may exercise within any other State the general powers con-

ferred by its own charter, unless it is prohibited from so doing, either in direct enactments of the latter State, or by its public policy to be deduced from the general course of legislation, or from the settled ajudication of its highest court.' And this court has repeatedly reiterated the rule stated by the Supreme Court of the United States. (*O'Brien* v. *Wetherell,* 14 Kan. 616; *Railroad Co.* v. *Fletcher,* 35 Kan. 236, 10 Pac. 596; *Kansas City Bridge and Iron Co.* v. *Comrs. of Wyandotte Co.* 35 Kan. 560, 11 Pac. 360.) It has been the policy to permit foreign corporations, chartered under the laws of other States, to transact business here. In 1898 an act was passed by the legislature providing for the regulation of foreign corporations, and prescribing the method by which they might be permitted to do business in this State."

Plaintiffs also rely on *Myatt* v. *Ponca City Land and Improvement Co.* 14 Okla. 189, 78 Pac. 185, and *Lafferty* v. *Evans,* 17 id. 247, 87 Pac. 304. In the *Myatt case* it was sought to quiet title to certain lots in Ponca City, Oklahoma. In that case the corporation was organized for the purpose of owning, buying, etc., real estate, buildings, and improvements in Oklahoma territory. The court held that the Ponca City Land & Improvement Co. achieved no legal existence because, as the court said, "it will be observed that the charter of this corporation did not authorize it to transact any business or have any vitality in the State of Kansas. * * * Corporations are created for some purpose other than the mere exercise of creative power, and consequently, when a corporation is attempted to be created without giving to it any power to act in the State of its creation, it can exercise none in any foreign country. * * * By no rule of construction or rational use of language can this be said to be an Oklahoma corporation, for it is neither authorized by the laws of Oklahoma, nor does it pretend to be organized under them, or to have its home in reach of their authority. For similar reasons, it cannot

be held to be a Kansas corporation, for it is neither authorized to do business in that State, nor created for the purpose of doing any business under the authority of the laws of that State."

It is contended here, and was argued in the trial court, that a corporation may be legally organized to transact all of its corporate business outside the State of its creation, "where it is permitted to exercise some of its corporate powers in the State of its creation." As to this proposition of law the appellants say, in their brief, "We have no fault to find with this contention, except to point out that it has no application to the case at bar, because the so-called Spivey Building Corporation (Delaware) had no authority to exercise any of its corporate powers in the State of Delaware." This, we take it, is the very essence of the plaintiffs' contention, and if this position be unsound, the judgment of the trial court must be affirmed and nothing further, in this large record, need be considered.

The Kansas and Oklahoma cases upon which appellants place their entire reliance are quite readily distinguishable from the case at bar and will require but little comment. In the *Land Grant Railway case* the decision is based upon the court's construction of the charter of that company as definitely precluding it from transacting any business in Pennsylvania, the State of its incorporation, and from having any office there. The true position of the Kansas court, its position in regard to the rule of comity, and its own interpretation of the *Land Grant Railway case* is disclosed by the foregoing quotation from that court. So far as the Oklahoma cases are concerned, they cannot be in any degree controlling, because the Kansas corporation, Ponca City Land and Improvement Co., was organized to do a business in Oklahoma for which no Oklahoma corporation could be incorporated.

On the other side of this question we find the authorities persuasive in logic and harmonious in result. Thus,

in the early case of *Merrick* v. *VanSantvoord,* 34 N. Y. 208, it was sought to hold a member of a corporation liable for a tort because the corporation was organized in Connecticut, but its entire business transacted in the State of New York. The court said: "A corporate charter is in the nature of a commission from the State to its citizens, and their successors in interest, whether at home or abroad. Each government, in the exercise of its own discretion, determines the conditions of its grant. It is free to impose or omit territorial restrictions. It cannot enlarge its own jurisdiction, but it can confer general powers, to be exercised within its bounds, or beyond them, wherever the comity of nations is respected. For the purposes of commerce, such a commission is regarded, like a government flag, as a symbol of allegiance and authority; and it is entitled to recognition abroad until it forfeits recognition at home. Under such commissions, New York has sent forth its citizens from time to time with corporate franchises and immunities, to gather wealth from the coal mines of Pennsylvania, the silver mines of Mexico, and the gold mines of California; to establish lines of inland navigation on the Orinoco and the Amazon; to plant forest trees beyond the Mississippi; to fish in the northern and southern ocean; to found Christian missions in Asia, and to colonize freedmen on the coast of Africa. In many of these cases the franchises were, by the terms of the charter, to be exercised in foreign territory." The court referred to the Panama Railroad Company which was organized under the laws of New York to construct and maintain a railroad across the Isthmus of Panama, and other similar instances, and continued: "We see no reason why a southern State may not grant, to a corporation of its planters, the right, to erect mills for the manufacture of their cotton in New England; nor why the legislature of Massachusetts may not authorize a company of Lowell millers to raise cotton in South America or on the Sea Islands. The

State of Illinois touches neither the Atlantic nor the Pacific; but if it should organize a company of its citizens to transport produce on the ocean, with its office in the city of New York, and its business conducted by managers, elected annually in Chicago, the rights of the corporation would be recognized wherever the obligations of national law are respected."

In *Troy and North Carolina Gold Mining Co.* v. *Snow Lumber Co.* 173 N. C. 593, L. R. A. 1917E, 892, 92 S. E. 494, the company was organized under the laws of New York for the purpose of conducting a gold mining business on certain lands in Montgomery county, North Carolina. This land was deeded to the company which brought suit to recover possession. The same contention was made in that case as in this one,—*i. e.*, that New York "gave it no authority to do business in that State, and, being without authority to do business in the State of its creation, no other State has jurisdiction to grant it power to do business in North Carolina alone." In deciding against this contention the court referred to the fact that it was by no means unusual for corporations to be chartered in one State to do business altogether elsewhere, except that the home office is in the State of its incorporation. Reference was made to the Union Pacific Railway Company, operating a line of railroad from Kansas City to Ogden, Utah, which was organized as a Kentucky corporation, though it had no trackage in Kentucky; to the Southern Railway Company, which operated several hundreds of miles of railroad in North Carolina although it was not a corporation of that State, and other instances. The court said: "Indeed, the practice, whether good or evil, of taking out charters in one State with which to do business solely in others is too general, and has been too long recognized, to be now questioned. It is only necessary that such non-resident corporations shall comply with the requirements of the statute of the State, or States, other than that of its origin,

as to the conditions precedent to doing business in such other States. * * * The articles of incorporation in this case are therefore not void on their face, as contended by the defendants." Other cases to the same general effect are, *Demarest* v. *Flack*, 128 N. Y. 205, 28 N. E. 645, *Missouri Lead Mining and Smelting Co.* v. *Reinhard*, 114 Mo. 218, 21 S. W. 488, *State* v. *Cook*, 181 Mo. 596. All of these cases are fully discussed in the brief and argument for the appellees, but the reply brief filed by the appellants, fails to mention any of them.

As we noted earlier in this opinion, the appellants concede the weakness of their position if it be held that the corporation is permitted to exercise some of its corporate powers in the State of its creation. This concession disposes of the litigation. Considering this corporation from the moment of its origin down to, and including, all of the times here in question, there is no single corporate act, or thing, that it might not have done from its office in Dover, Delaware. From and in that office it could have negotiated for the purchase of the real estate, accepted a deed thereto, approved plans and specifications and let building contracts. In that office it could have executed all leases, collected all rents, effected all insurance, and paid all taxes. From and in that office it could have employed and contracted with all of the necessary agents and servants for carrying out its purposes. Except so far as necessary to comply with the foreign corporation law of Illinois, it was unnecessary for the company to even maintain an office in this State. That which was done in Delaware was done in accordance with the laws of that State, and that which was done in Illinois was in accordance with the laws of this State. The object for which it was incorporated in Delaware was a lawful object for which it might have been incorporated in this State, and its admission to do business in this State was strictly in accordance with the statutes prescribed for such a case. It would be exceedingly

difficult to estimate the confusion that would result in the business world from any other holding, and we believe that no other result can be reached without falling into an ingenious error.

The entire case is founded on the supposed total invalidity of the Delaware corporation, and its supposed total lack of corporate power to act, either as a grantee or grantor, of the real estate involved. With this point decided adversely to appellants there is nothing left for us to consider in this rather large record.

The judgment of the circuit court will be affirmed.

*Judgment affirmed.*

Mr. JUSTICE JONES, dissenting.