THE STATE ex rel. BROWN CONTRACTING AND BUILDING COMPANY v. COOK, Secretary of State.

**In Banc, May 11, 1904.**

1. **FOREIGN CORPORATION: Comity: When Denied.** It is only when some rule of law or principle of policy adopted by this State would be interfered with by allowing a foreign corporation to do business within this State, that the usual rule of comity, which places foreign corporations on the same footing as domestic corporate bodies, will be refused.

2. ———: **By Citizens of this State.** So long as a corporation organized under the laws of another State by citizens resident within this State, pursues a lawful business and violates no law of this State, the Secretary of State can not refuse it a license to do business in this State.

3. ———: ———: **Purpose of Avoiding Laws.** The mere facts
that two of the incorporators of a corporation organized under
the laws of New Jersey reside in this State and own all its
stock except one share which is owned by a resident of New
Jersey, and that its entire capital stock is represented by prop-
erty located in Missouri, and its business is to be transacted in
this State, do not authorize the court or Secretary of State to
decide that it was organized under the laws of New Jersey for
the purpose of evading the laws of this State under a law which
declares that "the Secretary of State shall not license any for-
eign corporation to do business in Missouri when it appears that
such corporation was organized under the laws of a foreign
state by citizens and residents of Missouri for the purpose of
avoiding the laws of this State." If it appear that the corpora-
tion has complied with the laws of New Jersey and that the bus-
iness it proposes to transact in this State is not in contraven-
tion of any law of this State, these facts do not justify the Sec-
retary of State, under that statute, to refuse it a license to do
business in this State.

## Mandamus.

PEREMPTORY WRIT AWARDED.

*Lathrop, Morrow, Fox & Moore* for relator.

(1) It is not a fraud upon the laws of the State of
Missouri for citizens thereof, in connection with citizens
of another State, to form a corporation under the laws of
the other State to do business in this State, when such
corporation is authorized by the laws of both States.
7 Am. and Eng. Ency. of Law (2 Ed.), p. 650; 2 Mora-
wetz on Priv. Corp. (2 Ed.), sec. 965a; Demarest v.
Flack, 128 N. Y. 205; Hanna v. Petroleum Co., 23 Ohio
St. 622; Newberg Petroleum Co. v. Weare, 27 Ohio St.
343. (2) It is the settled policy of Missouri to encour-
age the combination of capital in lawful business enter-
prises under corporate management. It needs but a
glance at the corporation statutes of Missouri to estab-
lish the proposition that it is the settled policy of this
State to encourage and foster the organization or cor-
porations in lawful business enterprises. An examina-

tion of chapter 12, and the different articles therein, of Revised Statutes of Missouri, 1899, will show that the whole field of business may be occupied by a corporation lawfully organized.  State ex rel. v. Corkins, 123 Mo. 56.

*Edward C. Crow*, Attorney-General, and *Sam. B. Jeffries*, Assistant Attorney-General, for the State.

(1)   A corporation is a mere creature of the law and has no extraterritorial existence beyond the limit of the State or country by which it is created.   They dwell in the place of their creation and can not migrate to another sovereignty except by the comity between States, or express authority of the State in which it wishes to transact a portion of its business.   Bank v. Earle, 13 Peters 519; 1 Clark & Marshall on Corporations, sec. 114; vol. 3, secs. 836, 837; Paul v. Virginia, 8 Wall. 168; Banking Company v. Carr, 76 Ala. 388; Denver v. Flack, 128 N. Y. 205; Waters-Pierce Oil Co. v. Texas, 177 U. S. 28; Ins. Co. v. Baggs, 172 U. S. 557; s. c., 136 Mo. 382.   (2)   Relator, as a corporation, is a fraud as against the laws of the State of New Jersey, and also, the laws of Missouri.   Relator is organized under the laws of the State of New Jersey, with a capital stock of five thousand dollars.   Its incorporators and stockholders are three in number, two of whom reside in the State of Missouri; and have subscribed for and hold in good faith forty-nine hundred dollars of the capital stock, while the non-resident holds one share, the par value of which is one hundred dollars.   The affidavit of the president of the company is to the effect that all of the capital stock is to be employed in the transaction of business in the State of Missouri.   This shows that at the time of the organization of the company, it was the intention to migrate and it is now the intention of the company to transact all its business within the limits of this State.   By its conduct in transmitting all of its capital to the State of Missouri, it has deprived itself

of the means by which it may transact business in the State of its nativity; in fact, by reason of the circumstances, it can not conduct business in the State of New Jersey. A judgment against it in that State would have to be sued upon in a foreign State before it could be realized upon. The law of comity between States does not require a State to allow a foreign corporation to do business or hold property within its limits, or require the courts to enforce its contracts made within the State or otherwise recognize it, when to do so would violate any express provision of the Constitution or laws of the. State, or be contrary to the principles of its common law, or contrary to its public policy, as established or shown by the general course of its legislation. It has been held that a foreign corporation will not be allowed to come into a State and exercise powers, which, although conferred upon it by its charter, are denied by the laws or public policy of the State to its own corporations, and if it attempts to do so, the courts must refuse to recognize it or enforce its contracts. It will, therefore, be observed that because relator is unable to transact the business for which it is incorporated in its native State, it should not be permitted to transact business in this State. People v. Howard, 50 Mich. 239; Taft. v. Ward, 106 Mass. 58; Hutchens v. Coal Co., 4 Allen 580. (3) The Secretary of State has a discretionary duty to perform in the issuance of license to foreign corporations to transact business in this State, and this discretion, when exercised without corruption or fraud, can not be controlled by mandamus proceedings. American Casualty Co. v. Flyer, 60 Conn. 448; State ex rel. v. Nome, 43 Ohio St. 103; Dunlop v. Black, 128 U. S. 40.

GANTT, J.—This is an original proceeding in this court by the relator to obtain a peremptory writ of mandamus directing the Secretary of State to grant a license to the relator, a foreign corporation, organized and

chartered by the State of New Jersey, to transact its business in this State.

The relator is a business corporation organized to carry on the business of contracting for the construction by it of buildings for others, and the construction by it for others of houses, buildings, structures and works of every description, and to have the power to acquire by purchase, lease, exchange, hire, or otherwise of lands or any interest therein, and to sell, lease, let, mortgage or otherwise dispose of such lands, and to undertake the management of such property, building and lands, and to hold, purchase, mortgage and convey real and personal property outside of the State of New Jersey and in the several States of the Union and especially in the city of Kansas City, Missouri.

The capital stock was limited to five thousand dollars, the shares to be of the par value of $100 each; was all subscribed and paid up in full, of which Samuel J. Brown, of Kansas City subscribed for and was apportioned forty-eight shares and George J. Brown, of Kansas City and Mark W. Hatch of Newark, New Jersey, one share each.

The petition alleges that at the time of making its application for license or certificate of authority permitting it to transact business in the State of Missouri, it presented and tendered to the Secretary of State a certified copy of its articles of incorporation duly authenticated by the proper authorities of the State of New Jersey, and in addition thereto all the sworn statements required by the laws of Missouri, to-wit:

First. A statement under its corporate seal duly sworn to by Samuel J. Brown, its president, and George L. Brown, its secretary, setting forth the business of the corporation which it proposes and desires to carry on in the State of Missouri as required by the act of March 24, 1903, of the General Assembly of Missouri, a copy of which statement is attached to the petition.

Second. A statement duly sworn to by Samuel J.

Brown, its president and its principal officer in Missouri, setting forth the proportion of its capital stock represented by its property located in and being transacted in Missouri, which statement also set out the location of its principal office in this State where legal service may be obtained upon it, a copy of which statement is also attached to the petition and made part of it.

Third. An affidavit by the president showing that it is a corporation organized under the laws of New Jersey; that its capital stock is $5,000, divided into fifty shares of the par value of $100 each; that all of said stock has been bona fide subscribed and all of it actually paid up, a copy of which affidavit is also attached to the petition and made a part of it.

Fourth. An affidavit of the president showing that the corporation was not and is not in contravention of the laws of Missouri against pools, trusts, and conspiracies and that it is not a member of any pool, trust, agreement, combination, confederation or understanding with any other person, or association to regulate the price of any article, etc., as required by the laws of this State, a copy of which affidavit is also attached to the petition and made a part of it.

The issuance of the alternative writ was waived and the Secretary of State filed his return in which he admits all of the allegations in the petition, but assigns as his reason for denying relator a license a *proviso* of the act of 1903   (Laws 1903, p. 121), in the following words: "Provided, further, that the Secretary of State shall not license any foreign corporation to do business in Missouri when it shall appear that such corporation was organized under the laws of a foreign State by citizens and residents of Missouri *for the purpose of avoiding the laws of this State,* as it would be a fraud upon the laws of both States and its pretended incorporators would be held as partners, and as such become liable for the debts of the alleged corporation," and that as

the articles of incorporation of relator disclosed that two of the three incorporators of relator are, and were at the time of the incorporation of said company in New Jersey, citizens and residents of Missouri, and that these two subscribed and now hold forty-nine of the fifty shares of the stock of relator, and that the entire amount of the capital stock of relator was represented by property located in and business to be transacted in the State of Missouri, the Secretary of State concluded that said corporation fell within the above cited proviso to the act of 1903, and for that reason he declined to issue it a license to do business in this State. He admits that he has no evidence that said corporation was formed by citizens of this State to avoid our laws unless such evidence is found in the facts above stated. Relator demurs to the return, and the issue thus tendered is whether the fact that citizens of Missouri formed a corporation in another State to do business in this State is of itself evidence that it was so formed to evade our laws.

It is not asserted that relator has in any particular failed to comply with the laws of New Jersey and it is not suggested that the business it proposes to transact in this State is in contravention of any law of this State; on the contrary, a reading of the articles will demonstrate that they are such as are recognized by our laws providing for the incorporation of domestic business corporations. It is conceded that the general purposes for which this company is organized are not in contravention of any law, either of New Jersey or Missouri.

Certainly it can not be urged as an objection to this corporation that all of its capital shall be invested in property in this State and subject to taxation by this State and that it shall otherwise be amenable to all the laws governing our domestic corporations. Looking to our statutory provisions for the public policy of the State it will be readily observed that we have adopted a most liberal comity toward corporations organized

under the laws of other States and countries. Indeed, we have placed them upon substantially the same footing as our own domestic corporate bodies and given them the same powers and subjected them to the same obligations that are provided for like corporations in this State. [Sec. 1024, R. S. 1899.] We have nowhere prohibited such foreign corporations from doing business in this State on account of the citizenship of the incorporators, save in the proviso to the act of 1903, and in that proviso the fact that our citizens are the incorporators does not bar such corporations, but on the contrary the implication amounts to a positive permission, provided only they have not formed such corporation *for the purpose of evading our laws.* When therefore, such foreign corporation presents itself for admission to the State and not only shows that its articles provide powers and a business not opposed to our laws, but such as we grant to our own like domestic corporations, there is nothing in the proviso to the act of 1903 which would exclude them. ''It is only if some rule of law or principle of policy adopted by a State would be interfered with by allowing a foreign corporation to transact business within its jurisdiction, that the usual comity will be refused.'' [2 Morawetz on Private Corporations (2 Ed.), p. 925.]

If the articles of relator disclosed that it was its purpose to transact a business forbidden by our laws, organic or statutory, then it was clearly the duty of the respondent Secretary of State, to refuse it a license, but when he concedes that no such purpose appears in its charter, and that the only objection he has to granting it a license is that two of the incorporators are citizens of this State and own a majority of the stock and that all of its business and property will be located in this State, then he is not justified in refusing to license it. The question before is not new in either Missouri or in the courts of last resort in other States or the Union.

In Demarest v. Flack, 128 N. Y. 205, the defendants, who were citizens of New York, organized a corporation

under the laws of West Virginia to do business in the State of New York. It was urged that the corporation thus formed was a fraud upon the laws of New York and that the individual corporators were liable as partners. The corporation was formed in compliance with the laws of West Virginia. The Court of Appeals of New York held that whether said corporation so formed was an attempted evasion of the laws of New York was a question of law for the court. Among other things the court said: "The agreement which was signed by the corporators in this case and duly acknowledged and presented to the Secretary of State of West Virginia, clearly shows that the corporators were residents of New York, and that the principal office of the corporation was to be in New York, and the inference was a fair one that the principal business of the corporation was also to be conducted in New York. The Secretary of State, to whom the papers for organization of the corporation were presented, was compelled to pass upon and decide the question whether they conformed to the laws of West Virginia before he received or filed them or gave the certificate of incorporation. He did pass upon the question, and did thereupon issue the certificate of incorporation under the great seal of the State, and attested by his official signature. So far as the laws of West Virginia are concerned, it is plain that the corporators thereupon became a corporation, and in that State the certificate was, by the laws thereof, evidence of the existence of such corporation. There was no fraud or evasion of the laws of West Virginia in thus becoming incorporated. The reference to her laws above made shows conclusively that the formation of corporations thus composed and for the purpose of doing their principal business outside the limits of that State was contemplated in these laws. This corporation was beyond all question legally incorporated and entitled to recognition in the State of West Virginia. Unless, therefore, it can

be said that the acts of our citizens in procuring an in-
corporation under the laws of West Virginia for the pur-
pose of doing business here were, as a matter of law,
a fraud and an evasion of our own laws and hence in
conflict or inconsistent with our domestic policy, such
foreign corporation is entitled to recognition and pro-
tection in our own tribunals.  [Merrick v. Van Sant-
voord, 34 N. Y. 208.]  It is urged that such acts are
thus inconsistent and in conflict with our policy because
citizens of our own State are in that way enabled to
evade our own laws relative to home corporations and
to avoid personal liability by incorporating under the
laws of foreign States, which may be more favorable to
members than are our own laws.  I think when this
claim is examined in the light of our own legislation,
it will be seen that there is no substantial basis for it to
rest upon.  An examination of our laws shows that it
is, and for many years has been the policy of this State
to enlarge the facilities for the formation of corpora-
tions.  General laws are on our statute book for the
formation of corporations of almost every conceivable
kind, and under some of them a corporation of the kind
mentioned in this case could be readily formed.  The
freedom from personal liability would be as great and
could be as easily obtained under our own laws as under
the laws of West Virginia.  The security of the creditor
would not be substantially greater in the case of the
domestic than in that of the foreign corporation.  In the
latter the creditor has the remedy of attachment and he
can obtain about as easy access to its property as if it
were domestic instead of foreign.  There is really noth-
ing to evade by incorporating under a foreign law.  No
harmful results flow to the creditor or to the community
here by such incorporation.  Where a corporation formed
under another jurisdiction comes here to do business of
a kind which we permit to be done by corporations and
where our laws provide for incorporating individuals
for the purpose of doing that business, it is difficult to

see how the terms 'evasion' and 'fraud' can be properly applied to acts of our citizens whereby they obtain incorporation in another State. When they come into our State to do business they must conform to our laws relating to foreign corporations and comply with the terms laid down by us as conditions of allowing them to transact business here. In the case of many kinds of corporations such conditions have already been imposed by our laws, and if there be any kind where none is imposed, it is conclusive evidence that up to this time the Legislature has not thought it conducive to the true interests of the State and its citizens to impose them. I do not intimate that it is necessary for a State to expressly by statute exclude foreign corporations from acting within its jurisdiction. The policy of the State may exclude them and that policy may be clearly established by a reference to the general legislation of the State. I find none such in the laws in this State.

"It has been urged that the easy way which our laws provide for forming corporations is in itself a reason why we should not recognize as a corporation those of our own citizens who have gone to another State for the purpose of incorporating themselves under the laws thereof, to do business in our own State as such corporation. We think there is very little force in the argument. The policy which we assume in our own State, as evidenced by her laws upon the subject of the formation of corporations, is one which looks to their ready and easy formation as a means of transacting business with an accumulation of capital and an exemption from personal liability to the largest extent consistent with reasonable supervision by the State. The facilities for incorporation offered by this State are not the result of any desire to promote their formation in other States. They are offered because of a policy on our part which urges upon the State the propriety of furnishing them as one means of controlling the business done by them and keeping it within our borders. If in

any particular case it is thought by those interested in the matter that a business can be done in our own State and by our own citizens with greater facility under the form of a foreign corporation than under that of a domestic one, there is no public policy which forbids its transaction under such form. The supervision of a foreign corporation by this State may easily be exercised by imposing terms as a condition of permitting it to do business here. The absence of any such terms in our legislation forms no reason for refusing to recognize the corporation. The power rests with the Legislature to say whether any, and if so what, terms shall be imposed upon such corporations as a condition of granting them permission to do business here. In the absence of legislation, our courts must either refuse absolutely, or else they must recognize the right of such corporations to come to this State and do business here. The courts themselves can not impose terms and conditions.''

In Lancaster v. Amsterdam Co., 140 N. Y. l. c. 591, speaking of the policy of the State with reference to foreign corporations, the same court further says: ''It seems to me very clear upon examination of our laws and by reference to such judicial opinions, that there never was a time in the history of the State when a foreign corporation was prevented from entering its boundaries to transact business, which a non-resident natural person might have transacted here. What public policy is invaded, and what public interests are prejudiced, by extending to a foreign corporation, for the transaction of its business, the privilege and protection of the laws of our State, even when that business involves the acquisition of and dealing with real property? If we are to consider the question simply in the light of a sound or good policy, there are abundant reasons for holding that it is to the public advantage that our borders should be as much open, for all lawful purposes, to foreign corporations as to natural persons. Their advent and lawful operations can not but tend to some

advancement in our commercial interests and must advantage the commonwealth. It is the policy of the State to encourage the employment of capital here by liberal laws; upon what reasonable ground shall we recognize the natural person who comes here and refuse recognition to the foreign corporation? And how is the matter affected if the capital is employed in dealing in the acquisition and barter of lands, and not in commerce, manufacturing or such like ways? What legal difference is there, which the State can recognize, if all the corporators happen to be residents of this State? The corporation is, nevertheless, a legal entity, endowed by a sister State with capacity and powers, and seeks our State as the field of its activity in the conduct of its business enterprise. Incorporations are, as a rule, advantageous to private and public interests as the business capacities of the general mass of mankind are constantly approving, associations of individuals, voluntarily combining their contributions, are able to perform works of various characters, which no one else is able to accomplish. I believe that to be a well-recognized principle in political economy. But we are not to consider the question as one simply of sound or good policy, but whether there is any known public policy which is affected. What reason is there that the courts shall condemn the business proposed to be carried on by the defendant? What vice adheres to it? The case does not fall within those which the courts have decided to be against public policy. The business is not immoral in itself. That it is not prohibited by legislation, I think I have been able to show.''

To the same effect is Merrick v. Van Santvoord, 34 N. Y. 208.

In Oakdale Mfg. Co. v. Garst, 18 R. I. 484 (28 Atl. 973) certain citizens of Rhode Island organized a corporation under the laws of Kentucky which conducted its business in Rhode Island. The Supreme Court of

Rhode Island held that it is not against the laws or policy of a State for citizens to form a corporation under the laws of another State to do business in the State of their citizenship. "While the fact that the citizens of Rhode Island go to Kentucky for an act of incorporation, is one that naturally excites curiosity, if not suspicion, as to the motives and good faith of the concern, yet, so long as it pursues a lawful business and violates no law of this State, we do not see how we can refuse to recognize it. True, the advantages of yearly statements and liability of stockholders given to creditors under our statute are wanting; but that is a matter for those who deal with the corporation to consider. We can hardly deny the right of a corporation to do business in this State, upon considerations of public policy, when our own statutes (Pub. Laws, c. 1200) expressly provide for corporations formed in this State for carrying on business out of the State."

In Hanna v. Petroleum Co., 23 Ohio St. 622, it is held: "A corporation chartered and organized in a sister State, with power to do business in Ohio as well as in its own State, may be made a party defendant to an action to replevin, in place of its agent against whom the action is brought, and recover in said action the value of the property replevied, although it had done no business in the State of its creation." The court says: "That a foreign corporation, under the present laws of Ohio, can hold property in the State, and sue and be sued in our courts, is well settled, and is perhaps not intended to be denied. The argument seems to be that this company was not a corporation, either because it was empowered by its charter to do business outside of the State of its creation, as well as inside the State, or else, because at the time these proceedings were had, the company had done no business beyond its mere organization, in the State of Pennsylvania. We are unable to see why the incorporation should be invalidated on either or both of these grounds. The question

vol. 181 mo—39

is simply, whether a corporation, authorized by its charter to do business both at home and abroad, and which, after due organization at home, commences its foreign business first, has a legal existence as a corporation. We answer that it has. The life of a corporation dates from its organization, and not from the time it begins business; and the insertion in its charter of the power to act outside of the State of its creation does not invalidate its existence. The company was a legal corporation in Pennsylvania as soon as organized there, and without commencing business there. Being such, it surely had a right to sue for and recover its property wherever found, provided the laws of the place did not deny it the right.'' This case was followed and approved in Newburg Petroleum Co. v. Weare, 27 Ohio St. 343, and Bank v. Hall, 35 Ohio St. 158; Moxie Nerve Food Co. v. Baumbach, 32 Fed. 205; and New Hampshire Land Co. v. Tilton, 19 Fed. 73. See, also, Saltmarsh v. Spaulding, 147 Mass. 227 (17 N. E. 316); North & South Rolling Stock Company v. People ex rel., 147 Ill. 234.

The Attorney-General in his brief in behalf of the Secretary of State cites the decision of the Kansas City Court of Appeals in Cleaton v. Emery, 49 Mo. App. 345, but an examination of that case will show that Judge GILL's opinion was not based upon the fact that citizens of Missouri incorporated under the laws of Colorado, but upon the fact that the corporation was not formed in compliance with the laws of Colorado, and for the further reason that the actual subscription of stock amounted to forty-three thousand dollars, whereas the capital stock was fixed at one million dollars and the articles of incorporation did not provide for the location of its general or principal office within the limits of Colorado. The Court of Appeals held that the incorporation was a fraud upon the State of Colorado, and that it was clearly in contravention of our laws to permit the said company to provide for a

capital stock of one million dollars and subscribe less than $50,000, and therefore our courts would not recognize it as a valid corporation, saying that "the sole purpose was to avoid the restrictions so wisely engrafted onto our corporation law. To hedge about and protect its people from false appearances and merely advertised capital that has no real existence, our Legislature has provided against the creation of those *corporations of abundant pretenses and no capital.*" To the same effect is Davidson v. Hobson, 59 Mo. App. 130. In this case it is admitted that all of the capital stock is not only subscribed, but fully paid up, and it is not questioned that the laws of New Jersey have been complied with.

As to the cases of Railroad v. Board, 6 Kan. 245, and Empire Mills v. Alston Grocery Company, 15 S. W. 200, we need only repeat what was said by the Court of Appeals of New York in Demarest v. Flack, 128 N. Y. 205: "The case of Railroad v. Board, 6 Kan. 245, simply holds that the courts of that State will not recognize a corporation formed under the laws of Pennsylvania, where the corporation is not itself permitted to do business in the State which grants its charter. It was also stated in the above case that the charter, if enacted by the Kansas Legislature, would have been void as contravening constitutional provisions. In such a case it would scarcely be expected that a foreign State would grant greater recognition and privileges than were accorded by the State under which the corporation was formed. It might readily be supposed that no rule of comity compelled the recognition of a foreign corporation to do acts which are prohibited by the laws of a State to its own citizens or corporations. It is upon this principle that Empire Mills v. Alston Grocery Company was decided by the Court of Appeals of Texas and reported in 15 S. W. 200, and to which our attention has been called. The Legislature of Texas prohibited the incorporation of corporations in that State of the character of the Iowa corporation, and the court held

that comity did not extend to the recognition of such a corporation by the courts of Texas.'' Also what was said by this court in Missouri Mining & Smelting Co. v. Reinhard, 114 Mo. 218, in which it was held that an English corporation, although not authorized to own and operate mines within England, were authorized to do so in Missouri and approving the doctrine announced in Morawetz on Private Corporations as follows: ''But suppose we are wrong in this, and that, by reason of the language used in the memorandum of association, the company can not purchase and operate mining land there (England), still it does not follow that it can not purchase and operate such lands here. In Railroad v. Coffee Co., 6 Kan. 255, it was held that a corporation created by the State of Pennsylvania, which could not do business nor have an office in that State, could not do business in the State of Kansas. Speaking of the Kansas case it has been said: 'While this doctrine is correct in principle its application requires much caution. The fact that all the operations of a corporation are carried on outside of the State in which it was incorporated is not necessarily an objection to the legality of these operations. It is only if some rule of law or principle of policy adopted by a State would be interfered with by allowing a foreign corporation to transact business within its jurisdiction, that the usual comity will be refused.' [2 Morawetz on Private Corporations (2 Ed.), sec. 965a.]''

The case of Montgomery v. Forbes, 148 Mass. 249, is not in conflict with the conclusion we have reached, as the Massachusetts court decided in that case that the defendant had not complied with the laws of New Hampshire and hence had never become incorporated, and hence would not be recognized in Massachusetts as a corporation. With the doctrine announced in this case we are satisfied, but it is apparent from the averments in the petition in this case admitted in the return that we have no such state of facts before us.

We think the Secretary of State should have granted the license prayed for, and accordingly direct the peremptory writ of mandamus to issue.

*Robinson, C. J., Brace* and *Fox, JJ.,* concur; *Burgess* and *Valliant, JJ.,* dissent; *Marshall, J.,* dubitante.