**SOUTHWESTERN BELL TELEPHONE CO. v. MIDDLEKAMP, State Treasurer, et al.**

(District Court, C. D. Missouri, W. D. March 9, 1921.)

1. **Courts ⬅➡366(1)—State Supreme Court's construction of state statutes accepted by federal court.**

Federal court must accept state Supreme Court's construction of state statutes.

2. **Evidence ⬅➡22(2)—Notice taken of much business done by corporations with no par value capital stock.**

The court judicially knows that much of the business of the country is done by corporations without par value capital stock.

3. **Constitutional law ⬅➡229(1)—State may make reasonable classification for taxation purposes.**

State may classify property for taxation purposes, but classification must be reasonable, not arbitrary, and must rest on some ground of difference having fair and substantial relation to object of legislation so that all persons similarly circumstanced shall be treated alike.

4. **Constitutional law ⬅➡229(1)—Taxation ⬅➡ 40(5)—State Franchise Tax Law held violative of guaranty of equal protection of laws.**

Franchise Tax Law of Missouri, providing for payment of $25 fee by corporations with no par value stock but requiring other corporations to pay tax based on outstanding capital stock and surplus, held violative of constitutional guaranty of equal protection of laws.

In Equity. Suit by the Southwestern Bell Telephone Company against George H. Middlekamp, State Treasurer of the State of Missouri, and another. Temporary injunction granted.

D. A. Frank, of Dallas, Tex., and J. W. Gleed, and Thos. O. Stokes, both of St. Louis, Mo., for complainant.

Frank W. McAllister, Atty. Gen., and John T. Gose, Asst. Atty. Gen., for defendants.

Before STONE, Circuit Judge, and VAN VALKENBURGH and WADE, District Judges.

PER CURIAM. Plaintiff's amended bill of complaint challenges the validity of the Franchise Tax Law enacted by the General Assembly of the State of Missouri. Session Laws 1917, p. 237.

In the case of St. Louis & San Francisco Railroad Co. v. George H. Middlekamp, State Treasurer, et al., this court, the present judges sitting, considered numerous objections presented by the plaintiff in that case, and sustained the law.[1]

One of the points urged was that the law is void, because in conflict with the provisions of the Constitution of the United States and the Constitution of the State of Missouri, which guarantee to all persons equal protection of the laws, because of the provision that corporations "having no capital stock" shall pay "a fee of twenty-five dollars," while corporations organized with capital stock are, under the provisions of the act, required to pay a tax based upon their "outstanding capital stock and surplus."

The same question is again presented in the case at bar. Upon the hearing in the St. Louis & San Francisco case, when this question was reached for discussion, counsel for the defendants insisted that inasmuch as under the law of Missouri a corporation without capital stock could not be created and that a corporation organized outside of the state of Missouri, without capital stock, could not be permitted to transact business within the state of Missouri, the question was purely academic.

The contention that a corporation without capital stock could not be created under the

---

[1] See opinion of United States Supreme Court on appeal 256 U. S. 226, 41 Sup. Ct. 489, 65 L. Ed. 905.

laws of Missouri was not disputed; nor was there serious contention, at that time, that a corporation organized without the state of Missouri, without capital stock, could be permitted to transact business in the state of Missouri.

Now, however, we are confronted with the opinion of the Supreme Court of Missouri, in State ex rel. Standard Tank Car Co. v. Sullivan, 282 Mo. 261, 221 S. W. 728, which holds "that a nonresident corporation organized without capital stock has the right to transact business within the state of Missouri," and it is further pointed out by the court that corporations of that character "have been admitted."

The opinion of the court also clears up any possible doubt of the construction which must be placed upon the words "corporations having no capital stock," as used in the Franchise Tax Law. The court says:

"We think of no reason why the state should desire to exclude from its borders companies organized in other states and having those species of stock merely because companies similarly constituted cannot be organized here. Instead, legislation has occurred in recognition of the possibility of corporations having no capital stock and organized for profit in another state being admitted to this state, and of the fact that they have been admitted. In the act laying a franchise tax on corporations generally foreign corporations without a capital stock are required to report to the taxing authorities regarding their business, in such manner as may be prescribed, and a lump annual tax is laid upon them. Session Laws 1917, p. 237, §§ 4, 5, and 6.

"Our statutes make no provision for the formation of such companies, except certain classes of mutual insurance companies, and possibly a few others, though the mutual insurance companies are all we call to mind. R. S. 1909, c. 61, arts. 10, 11, and 12.

"But section 6 of the Franchise Tax Law includes among foreign corporations having no capital stock upon which a franchise tax may be laid not only mutual and other insurance companies organizable under our statutes, but any other foreign corporation organized for profit and without a capital stock."

[1] Under our duty to accept the construction of state statutes by the Supreme Court of the state, it is therefore settled:

(1) That corporations organized with shares, without a par value, under the law of some other state have the legal right to be admitted to transact business within the state of Missouri.

(2) That the words "Any other corporation * * * having no capital stock," in the Franchise Tax Law, specifically refer to corporations organized with shares without a par value.

[2] The court judicially knows that much of the business of the country, in the present day, is done by corporations not having par value capital stock. They are not limited to any particular business, and there is nothing in the method of transacting the business that differs from the methods employed by the ordinary corporation.

Being admitted to transact business in the state of Missouri, there is nothing in the law which limits their power, as compared with any other corporation.

The Supreme Court of Missouri, in State v. Sullivan, supra, quotes from State ex rel. Brown Contracting & Building Co. v. Cook, 181 Mo. 596, 80 S. W. 929: "Looking to our statutory provisions for the public policy of the state, it will be readily observed that we have adopted the most liberal comity toward corporations organized under the laws of other states and countries. Indeed, we have placed them upon substantially the same footing as our own domestic corporate bodies and given them the same powers and subjected them to the same obligations that are provided for like corporations in this state."

From the foregoing, it must be apparent that an ordinary corporation with capital stock must pay a franchise tax based upon "three-fortieths of one per cent." of certain values defined in the statute; while a corporation, without capital stock, doing business in Missouri, is only required to pay a fee of $25.

A telephone company, organized in some other state, without capital stock, but transacting as much business, and using as much capital, as does the plaintiff, would, under the provisions of the act, pay $25, while the facts in this case show that the plaintiff is assessed approximately $53,000.

Is a law which permits such discrimination in taxing the franchises of corporations valid?

[3] It is the contention of counsel for the defendants that the state has the power to classify property for the purposes of taxation. That must be conceded. In the opinion of this court in the St. Louis & San Francisco Case, supra, this language was used: "Of course, upon the same line of business

substantial equality is required; while a state might impose a tax upon a pool hall it could not arbitrarily impose a higher tax upon one pool hall than another. Taxation is equal when the tax is substantially the same upon all persons or corporations engaged in the same line of business."

In that case, for the reasons heretofore stated, the court did not specifically determine the point in issue, with reference to the question here discussed. The court assumed that the law would not be invalidated by some provision which could, in no event, ever become effective because of the absence of corporations not having capital stock; but here the question is squarely presented, and it must be determined whether or not the classification adopted violates constitutional rights.

It is well settled that "the classification must be reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike." Royster Guano Co. v. Virginia, 253 U. S. 412, 40 Sup. Ct. 560, 64 L. Ed. 989. Decided June 7, 1920. "Equal protection is denied when upon one of two parties engaged in the same kind of business and under the same conditions burdens are cast which are not cast upon the other." Cotting v. Kansas Stock Yards, 183 U. S. 79, 112, 22 Sup. Ct. 30, 43 (46 L. Ed. 92).

The Court of Appeals, in this circuit, in Chicago, M. & St. P. R. Co. v. Westby, 178 Fed. 619, 102 C. C. A. 65, 47 L. R. A. (N. S.) 97, says: "The Fourteenth Amendment to the Constitution of the United States forbids any state to 'deny to any person within its jurisdiction the equal protection of the laws.' How may such legislation escape this inhibition? The answer is, by classification, and the concession is freely made that the Legislatures of the states may lawfully classify the subjects of their laws and make provisions applicable to one class of subjects that have no application to another class. But the members of these classes may not be selected arbitrarily without just or sound reason inherent in their respective situations and circumstances relative to the subject-matter of the legislation for the difference in the burdens imposed and the privileges conferred upon them by such a discriminatory law."

The Supreme Court of the United States in Southern Ry. Co. v. Greene, 216 U. S. 411, 30 Sup. Ct. 287, 54 L. Ed. 536, 17 Ann. Cas. 1247, thus expresses it: "It is apparent that the mere fact of classification is not sufficient to relieve a statute from the reach of the equality clause of the Fourteenth Amendment, and that, in all cases, it must appear, not only that a classification has been made, but also that it is one based upon some reasonable ground—some difference which bears a just and reasonable relation to the attempted classification—and is not a mere arbitrary selection."

The Supreme Court of Missouri has uniformly upheld these well-settled rules.

In State v. Baskowitz, 250 Mo. 82, 156 S. W. 945, Ann. Cas. 1915A, 477, it is said: "The courts have held very uniformly that the state may legislate in regard to a class, but cannot arbitrarily divide that class into two parts, giving to one part a privilege, or subjecting it to restrictions which do not apply to the others in the same class."

In Sams v. St. Louis & Meramec River Railroad Co., 174 Mo. 53, 73 S. W. 686, 61 L. R. A. 475, the court said: "Where there are two concerns engaged in precisely the same business, and both conducting it in precisely the same manner, a statute which would undertake to impose a liability on the one and not on the other, could not be sustained in the face of either our state or our federal Constitution."

In Russell v. Croy, 164 Mo. 69, 63 S. W. 849, it is said: "We do mean to say the classification must rest on some reason other than mere ownership and that different pieces of property of the same kind, held and used for the same or similar purposes within the same jurisdiction, cannot lawfully be so classified as that one is subjected to the tax and the other exempt, merely because one belongs to a natural person and the other to a corporation, or that one is the obligation of a corporation and the other that of a natural person, or one that of a large concern and the other that of a small one."

A classification must bear a "reasonable and just relation to the things in respect to which such classification is imposed." Southern Ry. Co. v. Greene, supra.

The "subject" of taxation here is the franchise, the privilege of doing business in the state of Missouri.

The value of such privilege is approximated as to corporations with capital stock by considering the amount of money (capital stock and surplus) used in the business of the corporation exercising the privilege.

The value of the privilege of doing business in Missouri cannot depend upon the particular form of the capital stock of the cor-

poration, whether with or without a fixed par value.

The classification cannot rest upon the question of "mere ownership," nor "because one belongs to a natural person and the other to a corporation." Nor can the classification be made to arbitrarily depend upon whether the corporation is organized in the state of Missouri, or in some other state. Southern Ry. Co. v. Greene, supra.

Under the foregoing considerations it must be apparent that the Franchise Law enacted by the General Assembly of the State of Missouri cannot be sustained. It expressly provides for inequality of burdens of taxation, regardless of the character of property owned by the corporations, the nature of the business, or the value of the franchise. Two groups of men, with a million dollars each, might incorporate, one group creating a corporation with capital stock, and the other organizing a corporation without capital stock. Under the Franchise Tax Law these two corporations could transact an equal amount of business, of the same kind, in the state of Missouri. One would be compelled to pay a tax based upon the value of its property; the other a mere fee of $25.

There is, in the mere fact that the stock of one has a par value, and that the stock of the other has not a fixed par value, no such distinction in the nature of the thing which is taxed, as justifies the discrimination. It is discrimination; it is not mere classification.

There is nothing in the nature of the noncapital stock corporation which renders it difficult for the state to impose approximately the same tax upon a corporation without capital stock that is assessed against corporations having capital stock.

In State v. Sullivan, supra, the court quotes from Petroleum Co. v. Hopkins, 105 Kan. 161, 181 Pac. 625, in which the court said: "The fact that the shares of its stock have no nominal par value is of little consequence. Any prudent charter board, in determining whether a foreign corporation is worthy of admission to do business in Kansas, would attach little importance to the nominal value of its shares of stock, even if they have a nominal value."

So there would be no difficulty in ascertaining with reasonable certainty the value of the franchise or privilege used by noncapital stock corporations, measured by the amount of the money used in its business.

[4] The Franchise Tax Law, in the foregoing respect, violating the constitutional requirements that "No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States. * * * Nor deny to any person within its jurisdiction the equal protection of the laws" (U. S. Const. Amend. 14), must be held void.

While the foregoing conclusion renders it unnecessary to decide other questions submitted, the court cannot refrain from expressing the hope that the Legislature of Missouri, now in session, will give serious consideration to other objections urged by counsel, especially the claim that banks and trust companies are favored because they do not include their deposits in the report of their capital stock and surplus.

Whether it was the intention of the Legislature that the deposits should be included is very indefinite, and much litigation may be avoided by a more definite expression.

Serious consideration should also be given to the point urged that the act does not provide for any notice, hearing, or review, either before or after the assessment of the tax.

This hearing is upon an application for a temporary injunction. Necessarily these questions will be subject to further consideration upon final hearing. We have been impelled to give the matter more extensive consideration than ordinarily, because of the possibility of legislative action at this time.

A temporary injunction will issue as prayed.