No. 33,675

CHAMPLIN REFINING COMPANY, *Appellant*, v. FRANK J. RYAN, as Secretary of State of the State of Kansas, *Appellee*.

(75 P. 2d 245)

Opinion filed January 29, 1938.

*Warren H. White*, of Hutchinson, *Nathan Scarritt* and *E. S. Champlin*, both of Enid, Okla., for the appellant; *A. C. Malloy* and *R. C. Davis*, both of Hutchinson, of counsel.

*Clarence V. Beck*, attorney general, and *Theo. F. Varner*, assistant attorney general, for the appellee.

The opinion of the court was delivered by

HUTCHISON, J.: This was an action by the Champlin Refining Company, a corporation of New Mexico, against the secretary of state of Kansas, to recover under G. S. 1935, 17-709, $375, being a part of the franchise fee of $500 paid by the refining company under protest, claiming that the method used by the secretary of state in computing such fee was unlawful, arbitrary and discriminatory and denied the plaintiff due process and equal protection of the laws as guaranteed by the fourteenth amendment to the constitution of the United States.

The defendant answered, denying that any arbitrary or discriminatory method in making the calculation of the amount of tax was used, and named the various statutes authorizing the method and plan followed by the secretary of state, which had been followed uniformly since the enactment of the laws on this subject.

The case was tried upon an agreed statement of facts of which the fifth, sixth, seventh and eighth are especially involved in the controversy as to the method being discriminatory. They are as follows:

"5. It is admitted that in arriving at the amount of the fee due to the state of Kansas from the plaintiff foreign corporation, computation was made in the manner alleged in paragraph 3 of the petition, to wit: that plaintiff's report showed that the issued capital stock of the plaintiff for the period covered thereby, consisted of 1,098 shares of preferred stock having a par value of $100 each, and 159,812 shares of common stock of no par value, and that the actual aggregate value of the aforesaid capital stock was $2,413,730. That the surplus of the plaintiff as shown by the report was $5,324,429.42; and the aggregate capital, plus surplus, was $7,738,159.78.

"That the report further showed that the total value of the property owned and business done by the plaintiff in 1935 was $17,833,574.15—of which $1,524,821.78 represented the property owned and business done in the state of Kansas; and further that the property owned and business done by the plaintiff in the state of Kansas represented 8.55 percent of the total of its business.

"That in computing plaintiff's fee under the terms of section 17-702, the defendant ascertained the proportion of its capital stock allocable to the state of Kansas, by multiplying plaintiff's capital plus surplus ($7,738,159.78) by the aforesaid percentage, 8.55 percent. From this method, it appeared that the capital stock of plaintiff allocable to the state of Kansas was $661,612.67, upon which amount the annual fee would be $500.

"6. It is further stipulated and agreed that it is the uniform practice of the secretary of state of the state of Kansas, in computing a corporation's annual fee under the provisions above set forth, insofar as all stock having a fixed par value is concerned, to compute the fee upon the basis of the par value of the

stock without reference to surplus or undivided profits, or any other factor than the face or par value of the stock.

"7. It is further agreed that since the enactment of chapter 150, Laws of 1921, section 12 (G. S. 17-312), the secretary of state of Kansas has computed fees due to the state of Kansas from all corporations, both domestic and foreign, having nonpar stock in the following manner:

"If the total sum of capital, plus surplus, is equal to or exceeds $100 for each share of nonpar stock, then such stock is considered the equivalent to a share of stock having a nominal or par value of $100, and fees are assessed by the secretary of state upon that basis.

"If, however, the total sum of capital plus surplus is a sum less than $100 for each share of nonpar stock, then the secretary of state, for the purpose of determining the actual value of the stock, pursuant to G. S. 17-312, computes the tax by the method outlined in paragraph 5 hereof.

"8. The Champlin Refining Company has been at all times mentioned herein and is now engaged in both interstate commerce and local business within the state of Kansas."

The trial court found "that the action of the secretary of state in assessing the tax against the plaintiff corporation was not arbitrary and was not discriminatory." From this finding and judgment thereon in favor of defendant the plaintiff appeals.

The secretary of state raises a preliminary question as to the jurisdiction of this court to hear and determine a case of this character, insisting that the matter of computing the amount of such franchise tax is purely administrative and not judicial, and citing the statute under which the hearing was had in the district court which made no provision for an appeal; also citing the recent inheritance tax decision (*National Bank of Topeka v. State,* 146 Kan. 97, 68 P. 2d 1076) and other Kansas cases along the same or similar lines.

G. S. 1935, 17-708, gives a corporation the right to be heard by the secretary of state upon the matter of determining the amount of fees due under the provisions of this act, and further states that—

"Any corporation aggrieved by the decision of the secretary of state may, within ten days, appeal to the governor, the attorney general and the state bank commissioner, whose decision in the matter shall be final."

The following section, 17-709, is in part as follows:

"If any corporation is aggrieved at the amount of the fee exacted of it under this act it may pay the same under protest, and such fee shall be kept by the secretary of state in a special fund, and the corporation may bring suit in the district court of Shawnee county, Kansas, to recover said fee or such part of it as may be just and equitable. . . ."

It will be observed from these two sections that the matter before the district court, and now before this court, was not an appeal from or a review of the determination of the governor, attorney general and state bank commissioner, for their decision was made final by statute, but this is an original action authorized by the second statute above quoted. It has been brought by the aggrieved corporation to recover such part of the fee assessed as may be equitable, after having paid the entire fee under protest. The duty of the trial court was limited to a determination of the method used in arriving at the amount of the fee being equitable or arbitrary and discriminatory. If an appeal is proper, it would necessarily be along the same line and would be only to determine whether or not the method of computation was arbitrary and discriminatory.

The decision in the inheritance tax case, *supra,* is based upon a different plan of procedure. The case in the district court concerning the same was not an original action, but only for a review of the order made by the tax commission on the petition of the aggrieved party for an abatement of the tax or part thereof. The closing part of G. S. 1935, 79-1517, is as follows:

"*Provided, however,* That any such executor, administrator, trustee or grantee may apply to any district court of competent jurisdiction for a review of any such order, and until final decision shall be entered by any such court such money shall not be refunded by said county treasurer."

In the opinion in the inheritance tax case, on page 101, it was said:

"The executor aggrieved by the order of the commission was not authorized by G. S. 1935, 79-1517, to institute an independent action against the state of Kansas, the inheritance tax commission, or the county treasurer, to recover money claimed to have been wrongfully exacted. A remedy was, however, provided. The remedy was limited by the statute which created it. That remedy was restricted to a review of the order of the commission. The statute does not provide for an appeal to the district court nor for further procedure there as in an original action."

In an earlier paragraph of the opinion a distinction was clearly drawn between proceedings under this section and under the section of the chapter concerning income tax.

No provision was made in the statute for appeal to this court in the inheritance-tax statute nor in the statute in the case at bar.

In the case of *Norman v. Consolidated Cement Co.,* 127 Kan. 643, 274 Pac. 233, it was held that the supreme court had no authority to entertain an appeal under the workmen's compensation law of 1927, and in the opinion it was said:

"In a comprehensive statute the legislature manifestly undertook to cover every phase of the right to compensation and of the procedure for obtaining it. . . . The substituted remedy being complete with a procedure of its own, it must be regarded as exclusive. It being substitutional and complete and exclusive, we must look to the procedure of the act for the methods of administration. We are not warranted in borrowing rules and methods from the civil code not included in the act itself. . . .

"It is argued that the right to appeal to this court has been recognized in condemnation and drainage cases as well as some others, but in none of those acts did the statutes substitute new and distinct remedies with a procedure of their own as in the act under consideration." (pp. 649, 650.)

The income-tax case of *Union Pac. Rld. Co. v. State Tax Comm.*, 145 Kan. 715, 68 P. 2d 1, is cited to show that the duty cast upon the tax commission was administrative and that the function of the trial court upon appeal was to see that the action of the commission was not fraudulent, unreasonable, arbitrary, oppressive or discriminatory, and not to substitute its judgment for that of the commission. In that case there was no question about the right of appeal to the supreme court, that being specifically mentioned in the same section which granted an appeal to the district court.

The supreme court has general appellate jurisdiction even if a distinct mention of it in some particular line of procedure should be omitted. Section 3 of article 3 of the constitution of Kansas is as follows:

"The supreme court shall have original jurisdiction in proceedings in quo warranto, mandamus, and habeas corpus; and such appellate jurisdiction as may be provided by law. . . ."

G. S. 1935, 20-101, is as follows:

"The supreme court shall be a court of record, and in addition to the original jurisdiction conferred by the constitution, shall have jurisdiction in all cases of appeal and proceedings in error from the district and other courts in such manner as may be provided by law. . ."

G. S. 1935, 60-3302, says the supreme court may reverse, vacate or modify any of the following orders of the district court, naming four such, and the next section defines a final order as follows:

"A final order which may be vacated, modified or reversed as provided in this article is an order affecting a substantial right in an action, when such order in effect determines the action and prevents a judgment, and an order affecting a substantial right, made in a special proceeding or upon a summary application in an action after judgment." (G. S. 1935, 60-3303.)

The following sections of the same chapter are pertinent as to the application of the code to actions in general, viz., 60-3822, 60-3823

and 60-3824. The concluding sentence of the last-named section is as follows:

"Where the statute gives an action, but does not designate the kind of action, or prescribe the mode of proceeding therein, such action shall be held to be the civil action of this code, and proceeded in accordingly."

In the case of *Pritchard v. Comm'rs of Greenwood Co.*, 26 Kan. 584, it was said:

"Of course where a remedy is given by statute, and the whole procedure for such remedy is also given in the statute or in some other statute, the civil code cannot apply; and where the remedy is such that in the nature of things the civil code cannot apply, of course it has no application; but where the procedure for the enforcement of the remedy is not given by statute, or where only a portion of the procedure is given by statute, then the civil code must govern so far as it can have any application thereto." (p. 588.)

In the case of *Cheek v. Railway Co.*, 89 Kan. 247, 131 Pac. 617, it was said:

"No procedure is prescribed for the enforcement of the right, and whenever the legislature gives an action but does not designate the kind of·action or prescribe the mode of procedure therein such action shall be held to be the civil action of the code of civil procedure and shall be proceeded in accordingly." (p. 254.)

This doctrine was approved in the case of *Harwood v. Railway Co.*, 101 Kan. 215, 171 Pac. 354.

We conclude, in line with these decisions based upon the general provisions of the code, that whenever the legislature gives an action but does not designate the mode or extent of procedure therein, such action should be held to be the civil action of the code of civil procedure, including the general right thereunder to appeal to this court.

The plaintiff corporation insists that the method pursued by the secretary of state in arriving at the amount of its annual franchise fee for the privilege of doing business in Kansas is contrary to the provisions of the statute directing the manner of determining such fee and is arbitrary and discriminatory and in violation of the fourteenth amendment to the constitution of the United States.

G. S. 1935, 17-702, is in part as follows:

"Every foreign corporation, for profit, now or hereafter doing business in this state, and owning or using a part or all of its capital in this state, and subject to compliance with the laws relating to the admission of foreign corporations to do business in Kansas, shall make a report in writing to the secretary of state, annually, on or before March 31, showing, in such form as the secretary of state may prescribe, the following facts as of the 31st day of December next preceding the date of filing.

". . . Upon the filing of such report the secretary of state, from the facts thus reported and any other facts coming to his knowledge bearing upon the question, shall determine the proportion of the issued capital stock of the company represented by its property and business in Kansas, and shall charge and collect from such company, in addition to the initial fees, for the privilege of exercising its franchise in Kansas, an annual fee upon that proportion of such foreign corporation's issued capital stock as is devoted to its Kansas business. . . . ."

The same statute then enumerates the classifications as to amounts of such fees, among others, when the issued capital stock used in Kansas exceeds $100,000, but does not exceed $250,000, the annual fee shall be $125. When the issued capital stock used in Kansas exceeds $500,000, but does not exceed $1,000,000, the annual fee shall be $500, and in the same manner the statute designates the fees in other classes both smaller and larger. It may be observed that under this statutory classification there is a recognized wide difference. In the last one above designated the fee is the same for two companies where one is twice as large as the other. We do not think it was the intention for it to be exactly proportional, but only within reasonable limitations or classes.

Appellant calls our special attention to the language of the above statute that the fee is to be based upon the proportion of the issued capital stock of the company and insists that the surplus should therefore not be included in the calculation. Of course, appellant has in mind the value of the issued capital stock, but nowhere in this long section is the word "value" used in connection with this phrase "issued capital stock." We are inclined to think these words are so used to distinguish the issued capital stock from, and to avoid the calculation being based upon, the authorized capital stock. Even if we would consider those words in connection with the value thereof, that would not be in harmony with the ninth paragraph of the same section which designates one of the items the corporation is required to set out in its annual report to the secretary of state:

"The value of the property owned and used by the company in Kansas, where situated, and the value of the property owned and used outside of Kansas and where situated." (G. S. 1935, 17-702 [9].)

Since 1921 we have had a law in this state defining nonpar stock and prescribing ways and methods of handling and taxing companies carrying its property in this way. G. S. 1935, 17-311, is as follows:

"Except as to any preferences, rights, limitations, privileges and restrictions, lawfully granted or imposed with respect to any stock or class thereof, shares of stock without nominal or par value shall be deemed to be an aliquot part

of the aggregate capital of the corporation issuing the same and equal to every other share of stock ·of the same class."

Two portions of the next section (17-312) are as follows:

"For the purpose of computing any capitalization or other statutory fee; or, any tax or taxes, the determination of which is based on the par value of shares of stock, and for the purpose of any statutory provision limiting the relation between indebtedness and capital stock, each share of stock without nominal or par value issued under the provisions of this act may be considered the equivalent to a share having a nominal or par value of one hundred dollars; or, the actual value of such stock or any other basis may be adopted which will justly carry out the provisions of the statutes of this state . . . In any investigation or proceeding to determine the value of the property, assets, or capital stock of a corporation having shares without nominal or par value under the provisions of this act, neither the stated capital of such corporation nor the number of shares of its outstanding stock without nominal or par value shall be controlling, but the same may be disregarded, or considered only to such extent as shall be necessary or proper for the purpose of such investigation or proceeding."

These sections contain the rules which the agreed statement of facts states were followed by the secretary of state in reaching a determination of franchise fee in this case. It will be observed there are three ways in which each share of stock without nominal or par value may be considered, (1) the equivalent to a share having a nominal or par value of $100, (2) the actual value of such stock, or (3) any other basis which will justly carry out the provisions of the statute. Since the actual value of the stock and surplus in this company is shown to have been much below $100, the first of the three methods would have made the franchise tax very much larger than what it was determined to be under the second method, which was used by the secretary of state. Appellant insists that this section and the three prescribed methods apply to domestic nonpar stock.· Without discussing whether they do so or not, we refer to G. S. 1935, 17-505, which says foreign corporations doing business in this state shall be subject to the same rules and provisions as domestic corporations, using the following language:

"Any corporation organized under the laws of another state, territory, or foreign country, and authorized to do business in this state, shall be subject to the same provisions, judicial control, restrictions, and penalties, except as herein provided, as corporations organized under the laws of this state."

Section 17-311, above quoted, by the use of the words, "aggregate capital," necessarily adds something to the meaning of the words "issued capital stock," many times repeated in section 17-702, above

quoted, and helps to confirm the view that more than the value of the "issued capital stock" was intended to be included in the calculation.

Reference is made to G. S. 1935, 17-303, for the purpose of showing that the term "capital" does not include surplus, and that section does provide that "stated capital," issued without nominal or par value, shall be the capital with which the corporation will begin business, increased by any net additions thereto or diminished by any net deductions therefrom, and shall not include any net profits or surplus earnings until they are transferred to capital. This makes a slight distinction, as the section specifically defines "stated capital," which may possibly under such definition be different from "issued capital stock," but the section merely excludes net profits or surplus earnings from being added to the capital until it is so shown on the books of the corporation over and above its liabilities.

A copy of the report filed with the secretary of state shows the value of the property owned and used by the company, but. does not show the liabilities that were deducted. However, the agreed statement of facts shows the surplus above and beyond the naked value of the stock, which surplus is several million less than the report shows the value of the property to be, which doubtless covers the items of liability which are omitted from the report. The report and the agreed statement of facts are sufficient, we think, to come within the requirements of the section last above cited.

The case of *Air-Way Corp. v. Day*, 266 U. S. 71, 45 S. Ct. 12, 69 L. Ed. 169, is cited where the United States supreme court held a tax based on the authorized nonpar shares was not reasonable and was in violation of the fourteenth amendment of the United States constitution. A large number of shares of the company had never been issued, but they were included in the determination of the amount of franchise tax. We have 250,000 authorized shares in the case at bar, but only the issued shares (159,812) were taxed.

The case of *O'Gara Coal Co. v. Emmerson*, 326 Ill. 18, 156 N. E. 814, also involved the feature of authorized capital stock being counted in estimating the franchise tax of a foreign corporation, but it also concerned the method of. computing nonpar stock of foreign corporations at $100 a share in imposing a license tax which the supreme court of Illinois held was a denial of equal protection and, due process and was arbitrary. The agreed statement of facts in the case at bar completely takes this case out of the rule stated in

the O'Gara case, *supra*, because the second paragraph of agreed statement of facts, section 7, shows the practice to be that the value of nonpar stock is never regarded as $100 per share unless and until the capital and surplus equals or exceeds $100 per share.

The case of *Southwestern Bell Telephone Co. v. Middlekamp*, 1 F. 2d 563, was cited and held the imposition of $25 franchise tax on corporations with no par value stock, but requiring other corporations to pay tax based on outstanding capital stock and surplus, was in violation of the equal-protection clause. It also held that classifications must be reasonable and not arbitrary and must rest on some ground of difference having fair and substantial relation to the object of legislation so that persons similarly circumstanced should be treated alike.

Another Missouri case cited is *St. Louis-San Francisco Ry. v. Middlekamp*, 256 U. S. 226, 41 S. Ct. 489, 65 L. Ed. 905, which involves the question of double taxation because the company being taxed was a corporation of the state of Missouri but did an interstate business, and although the taxation for franchise purposes was on a percentage basis, it was upheld.

In the case of *Quaker City Cab Co. v. Penna.*, 277 U. S. 389, 48 S. Ct. 553, 72 L. Ed. 1927, the court held that the imposing of a tax on gross receipts of a corporation operating taxicabs, when no such tax was imposed upon individuals or partnerships engaged in the same business, deprived the corporation of the equal protection of the law. This can be recognized as a strong decision in favor of the equal-protection principle, but the facts are far afield from those in the case at bar. It is not claimed in our case that any outfit under like circumstances was exempt or free from the payment of franchise tax. It is only claimed that in the method of computing the amount of tax there is an inequality. The opinion last cited states that the equal-protection clause does not "forbid classification in that connection, 'but it does require that the classification be not arbitrary but based on a real and substantial difference having a reasonable relation to the subject of the particular legislation.'" (p. 400.)

The agreed statement of facts in this case shows that the secretary of state used the par value of the stock as a basis of value in all cases where the stock had a par value. If the capital and surplus of a corporation with nonpar stock equalled or exceeded $100, then it was estimated on the basis of $100 per share, and if the

capital and surplus of a nonpar stock was less than $100 for each share, the proportion of capital and surplus allocated to the state of Kansas was the basis for determining the franchise fee. Under this plan the par and the nonpar companies were treated exactly alike as far as it was reasonably possible to do so, and it would be unreasonable to put nonpar companies with stock of less value than $100 in the $100 class. Of course, the excess above $100 per share, both par and nonpar, would apparently escape taxation, but to avoid this it would require something more accurate than classification. It would require actual and definite figures for each case without any classification.

It seems to us this distinction and classification is fair and reasonable and is based on a real and substantial difference. The very fact that the work being done in this matter is a classification recognizes there is a difference and therefore a necessity for classes as nearly alike as reasonably possible, as they seemed to be in this case. (See, also, 36 A. L. R. 795.)

We think the equal-protection clause was in no way violated in determining this franchise tax and that the method of determination and the assessment of the tax in this case was neither arbitrary nor discriminatory.

The judgment is affirmed.